UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NATIONWIDE PAYMENT SOLUTIONS, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Docket no. 09-CV-600-P-S<br>)<br>) |
| JAMES PLUNKETT and PLUNKETT & COMPANY, LLC, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiff's Motion for Preliminary Injunction (Docket # 8). The parties jointly requested that the Court not hold an evidentiary hearing on the Motion but asked for oral argument. The Court held oral argument on March 23, 2010. Having considered the oral and written submissions of the parties, the Court now GRANTS the Motion.

**I.    STANDARD OF REVIEW**

For Plaintiff to prevail on its Motion for a Preliminary Injunction under Rule 65(a) of the Federal Rules of Civil Procedure, it bears the burden of demonstrating: (1) a likelihood of success on the merits, (2) irreparable injury, (3) that such injury outweighs any harm to the defendant, and (4) that the injunction would not harm the public interest. See, e.g., Largess v. Supreme Judicial Court, 373 F.3d 219, 224 (1st Cir. 2004). "The decision whether to grant relief is based on a balancing of the different factors, with likelihood of success playing a pivotal role." Id. In a trademark case, such as this one, there is a "magnified" focus on the likelihood of success inquiry. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). In fact, when faced with a high likelihood of success on a trademark infringement claim,

the First Circuit has indicated that a court may presume that there will be irreparable harm absent injunctive relief and that public policy supports the granting of injunctive relief. See id. (citing I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir.1998) & Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 820 (1st Cir.1987)).[1]

## II. FINDINGS

In lieu of holding an evidentiary hearing, the parties asked that the Court admit and accept all of the declarations and exhibits submitted in connection with the Motion for Preliminary Injunction. From these documents, the Court finds the following facts:

### A. The Parties

Plaintiff Nationwide Payment Solutions, LLC ("Nationwide") provides electronic payment transaction services to municipalities, other public entities and private merchants, including, among other things, credit card verification and bankcard transactions.

Defendant James Plunkett ("Plunkett") is the sole owner of Defendant Plunkett & Company, LLC ("Plunkett & Company"), which he founded in February 2008. Since mid-March 2009, Plunkett has been doing business under the name GovPay or Government Payment Processing (together, "GovPay").

---

[1] Defendants have argued that such presumptions are no longer allowed following Ebay, Inc. v. Mercexchange, LLC, 547 U.S. 388, 394 (2006). While the First Circuit has not addressed the applicability of Ebay in the context of preliminary injunctions for trademark infringement, another District Court within the First Circuit has indicated that Ebay does not impact existing First Circuit precedent under which there is a presumption of irreparable harm once a court finds a substantial likelihood of success on a trademark infringement claim. See Operation Able of Greater Boston, Inc. v. National Able Network, Inc., 646 F. Supp. 2d 166, 176 (D. Mass. 2009).

B.     **The Relationship Between the Parties**

On or about December 29, 2007, Plunkett first contacted James Nonni, then Chief Operations Officer of Nationwide,[2] to discuss new rules regarding credit card payment processing, which were set to impact government credit card transactions. In light of these rules, Plunkett and others in the industry recognized a need to develop a "single card swipe solution" for credit card payments to governmental agencies.

At that time, Plunkett already had a potential buyer for a "single card swipe solution" in We Title America ("WTA"), a company that provides automotive dealers with proprietary information that aids in the processing of vehicle titles. Plunkett ultimately introduced Gaye Smith of WTA to Nationwide in early 2008. In January 2008, Plunkett and Smith participated in a conference call with Nationwide representatives, James Nonni and Patrick Allen. During that call, Nonni and Allen indicated that Nationwide could develop a "single card swipe solution" product for WTA.

Ultimately, Nationwide offered to design a "single card swipe solution" in-house and provide that solution to WTA without cost in exchange for WTA's agreement that Nationwide would own that solution and be free to market and sell that solution to other governmental entities nationally. WTA agreed to those terms. Working together, WTA and Nationwide conceptualized and developed a process and related software under which a single swipe of a credit card could be used to generate two transactions: (1) one transaction to pay the amount owed to the government entity and (2) a separate transaction to pay the service or convenience fee. The development process took approximately six months.

Plunkett assisted WTA and Nationwide in marketing the solution using various marketing materials and strategies. In that capacity, Plunkett had access to developmental

---

[2] Mr. Nonni became the Chief Executive Officer of Nationwide on January 1, 2008.

3

information on the "single card swipe solution" and relayed requests from various prospective customers regarding how the product could work. On or about March 21, 2008, Nationwide entered into an Independent Sales Agreement (Docket # 9-1) with Plunkett & Company. Pursuant to this Sales Agreement, Plunkett & Company was to solicit customers for Nationwide's products and services. In relevant part, the Sales Agreement provided that Plunkett & Company "shall hold itself out in public in the name of [Nationwide], and shall represent itself 'only' as [Nationwide], in connection with the specific marketing of [Nationwide] bankcard services." (Agreement § 2-8(A) (Docket # 9-1).) It also explicitly stated: "All sales manuals, customer lists, software and other media including trademarks provide [sic] to [Plunkett & Company] by [Nationwide] shall at all time remain the property of [Nationwide]." (Agreement § 9-3 (Docket # 9-1).)

In May 2008, Gaye Smith and Vint Lewis, both from WTA, traveled to Maine to work with Nationwide on the single card swipe solution. At that time, Nationwide provided Smith with a beta version of the payment software. At a dinner meeting during that visit, which Plunkett also attended, Nonni and Allen told Smith that Nationwide had formally adopted the name MUNICIPAY for the payment solution software.

On July 9, 2008, Plunkett met with Nonni. At that meeting, Plunkett was notified that Nationwide had chosen to market its single swipe payment software under the name MUNICIPAY and would be formally launching the name once it secured the MUNICIPAY domain name (www.municipay.com).

On July 12, 2008, Plunkett made a PowerPoint® presentation titled "A New Era in Municipality Credit Card Acceptance" (Docket # 9-2) at the 2008 Annual Conference of the National Association of County Collectors, Treasurers and Finance Officers ("NACCTFO"). On

the first page of the presentation Plunkett clearly refers to himself as a representative of "MuniciPAY" and thereby used the "MuniciPAY" name in a presentation to potential customers. Nationwide was a sponsor of the NACCTFO event. Nationwide reimbursed Plunkett's expenses for attending the NACCTFO conference. Multiple conference attendees perceived Plunkett as a Nationwide representative.

WTA continued to work with Nationwide and with Plunkett in his capacity of as an agent of Nationwide. WTA relied on Plunkett for information on Nationwide's plans and expectations for the marketing of the MUNICIPAY product. Problems arose. On multiple occasions, Smith of WTA believed Plunkett behaved in an unacceptable manner at sales and marketing-related events. As a result, in November 2008, WTA made a request to Nationwide that it cease working with Plunkett and instead work with other Nationwide representatives. Nationwide accommodated that request.

On April 8, 2009, Nationwide terminated the Sales Agreement with Plunkett & Company because it believed Plunkett had breached the Agreement in a myriad of ways, including competing against Nationwide, attempting to sell Nationwide's services using a separate entity, sharing Nationwide's confidential information with a competitor and failing to repay expenses advanced by Nationwide.

### C. The Trademark Filings

On December 16, 2008, Plunkett & Company applied to the United States Patent and Trademark Office ("USPTO") to register the MUNICIPAY mark for use in International Class 36. The application (Docket # 18-2) indentified the services to be marketed as "financial transaction services, namely, providing secure commercial transactions and payment options for municipalities to collect revenue, fees, taxes and convenience fees." (Docket # 18-2 at 3.) In the

5

Amendment of the Statement of Use, Plunkett indicated that he first used the mark in commerce on July 12, 2008 and submitted a copy of the NACCTFO PowerPoint® presentation.

On or about April 20, 2009, Nationwide applied to the USPTO to register the MUNICIPAY mark for use in International Class 36 to be used for electronic processing of payments made via electronic funds transfer, ACH, electronic check, credit and debit cards. Nationwide's application indicated that its first use in commerce was "at least as early as September 1, 2008." (Docket # 18-11 at 3.)

On July 16, 2009, the USPTO suspended Nationwide's trademark application pending its disposition of the previously filed application by Plunkett & Company. (See Docket # 18-12.) On December 29, 2009, the trademark application by Plunkett & Company matured into a registered trademark of MUNICIPAY (U.S. Registration No. 3732575) (Docket # 18-13). On February 2, 2010, USPTO refused Nationwide's application for the MUNICIPAY mark given that it was identical to the mark now registered to Plunkett & Company.

### D. The Domain Names

On or about November 8, 2008, Plunkett registered the domain name www.getmunicipay.com and shortly thereafter activated the domain. Plunkett was aware of Nationwide's use of the MUNICIPAY mark and the www.municipay.com domain name when he registered the www.getmunicipay.com domain name. In the spring of 2009, Defendants began routing viewers of the www.getmunicipay.com site to www.governmentpaymentprocessing.com, a website that offers products that compete with Nationwide's MUNICIPAY product. On the website www.governmentpaymentprocessing.com, Defendants suggest that GovPay is the same as MUNICIPAY.

Nationwide activated the domain name www.municipay.com in September 2009[3] and has been using that domain to advertise its MUNICIPAY software since that time. Nationwide has sold its software to approximately 250 government entities using the MUNICIPAY mark.

After months of attempting to informally resolve its ongoing disputes regarding the MUNICIPAY mark, Nationwide filed the pending case on November 24, 2009. The Amended Complaint presses claims for trademark infringement (Count I & IV), cybersquatting (Count II), false designation and unfair competition (Count III), deceptive trade practices (Count V), breach of contract (Counts VI & VII) and unjust enrichment (Count VIII). Nationwide then filed the pending Motion for Preliminary Injunction on January 18, 2010. On February 4, 2010, Defendants filed their Answer (Docket # 14), which asserts multiple counterclaims, including, in relevant part, claims that Nationwide's use of the MUNICIPAY mark infringes on Defendants' registered trademark (Counterclaims Count V & VI).

## III. DISCUSSION

Although this matter involves many different claims and counterclaims, Plaintiff's Motion for a Preliminary Injunction relates only to the trademark infringement and cybersquatting claims and the Court, therefore, limits its consideration to whether Plaintiff has shown a substantial likelihood of success on Count I (Trademark Infringement), Count II (Violation of 15 U.S.C. § 1125(d) (Anti-Cybersquatting Act)), Count III (False Designation and Unfair Competition under the Lanham Act), and Count IV (Common Law Trademark Infringement).

---

[3] See Nonni Aff. (Docket # 9) ¶18. The Court notes that the reference to September 2009 may be a typographical error since Plaintiff's Motion refers to the www.municipay.com website being activated in September 2008. (See Pl.'s Mot. (Docket #8) at 2.)

As to all of these claims, there is essentially one disputed question: who was the first to use the MUNICIPAY mark in commerce? As explained in the following section, the Court believes there is a substantial likelihood that Plaintiff will establish that Nationwide was the first user of the MUNICIPAY mark.

### A.  Substantial Likelihood of Success

To prove trademark infringement under the Lanham Act, Plaintiff must prove three elements: "(1) that it uses and thereby 'owns', a mark; (2) that Defendants are using the same or a similar mark; and (3) that Defendants' use is likely to confuse the public, thereby harming the plaintiff." Wild Willy's Holding Company, Inc. v. Palladino, 463 F. Supp. 2d 65, 68 (D. Me. 2006) (internal quotations and citations omitted). Given the identical nature of the MUNICIPAY mark at issue and the similar nature of the services offered, there is no question as to the second and third elements. Rather, the only issue is whether Plaintiff can establish a substantial likelihood of success on the first element. "Ordinarily, a party establishes ownership of a mark by being the first to use the mark in commerce." Estate of Coll-Monge v. Inner Peace Movement, 524 F.3d 1341, 1347 (D.C. Cir. 2008) (citations omitted). Mere invention of a name is not enough. See, e.g., Arvelo v. Am. Intern. Ins. Co., 875 F. Supp. 2d 95, 101-02 (D.P.R. 1995). Similarly, registration of a mark, as was done by Defendants in this case, does not give the registrant trademark rights. See Volkswagenwerk, 814 F.2d at 815 ("Trademark rights do not generally arise from registration.")

Plaintiff's argument that they were in fact the first to use the mark MUNICIPAY is two-prong. First, they assert that the May dinner meeting with WTA constituted a first use in commerce. Based on the preliminary record now before the Court, it appears that Nationwide representatives told WTA representatives that the software product they had jointly developed

would be marketed under the name MUNICIPAY. At the time, a version of the software product was provided to WTA. In the Court's assessment, there is a substantial likelihood that this May 2008 exchange between Nationwide and WTA qualifies as a first use in commerce.

Second, Plaintiff asserts that Nationwide first used the mark MUNICIPAY in commerce on the July 12, 2008 when Plunkett gave his presentation to the NACCTFO. Defendants agree that this date qualifies as a first use in commerce date but argue that Plunkett was not acting as an agent of Nationwide when he gave that presentation. Based on the current record, the Court believes Plaintiff has a substantial likelihood of proving that Plunkett was in fact acting as an agent of Nationwide during the July 12, 2008 presentation to a group of potential customers. In short, regardless of whether the first use in commerce date is May 2008 or July 2008, the Court is satisfied there is a substantial likelihood that the preponderance of the evidence will show that Nationwide was the first user. Thus, Nationwide has established a substantial likelihood of success on its trademark infringement claims.

To prevail on its cybersquatting claim, Nationwide must prove the following: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit. DaimlerChrysler v. The Net Inc., 388 F.3d 201, 204 (6th Cir. 2004) (citing Ford Motor Co. v. Catalanotte, 342 F.3d 543, 546 (6th Cir.2003)). In the Court's view, the current record easily establishes the first four elements. As to the final element, the record shows that Defendants began routing viewers of its www.getmunicipay.com site to a site that sold a competing product (www.governmentpaymentprocessing.com) right around the time that Nationwide terminated its Sales Agreement with Defendants. At the later website,

Defendants make multiple confusing representations regarding GovPay (the product now marketed by Defendants) and MUNICIPAY, which could lead a reader to believe the products are one in the same. Given this evidence, there is a substantial likelihood that Plaintiff will establish that Defendants have used www.getmunicipay.com with a bad faith intent to profit.

### B. Irreparable Harm

The Court believes that Plaintiff has shown irreparable harm based on a substantial likelihood that Defendants are infringing on their trademark by using the identical MUNICIPAY mark. Under these circumstances, the law of the First Circuit is that irreparable harm may be presumed. See, e.g., Operation Able of Greater Boston, Inc. v. Nation Able Network, Inc., 646 F. Supp. 2d 166, 176-77 (D. Mass. 2009); see also Webadviso v. Bank of America Corp., No. 09 Civ. 5769(DC), 2009 WL 5177997 at *3 (S.D.N.Y. Dec. 31, 2009) ("In cybersquatting cases, irreparable harm may be presumed where there is a likelihood of success.") (internal quotations omitted).

Alternatively, given the record, the Court explicitly finds that Plaintiff will suffer irreparable harm absent a preliminary injunction. If Plaintiff is ultimately successful on its claims, some aspects of its damages cannot be easily reduced to money damages, especially damage to the reputation and good will associated with the MUNICIPAY mark as a result of the likelihood of confusion. Under these circumstances, a finding of irreparable harm is warranted. See, e.g., Dominion Video Satellite, Inc. v. EchoStar Satellite, 269 F.3d 1149, 1156-57 (10th Cir. 2001); Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 18-19 (1st Cir. 1996) (explaining that irreparable harm can be established upon a showing that "legal remedies are inadequate").

### C. Balancing of the Hardships

In this case, the Court believes that the balance of hardships clearly tilts in favor of granting Plaintiff the requested injunctive relief. While Plaintiff has put forward evidence suggesting that Defendants' continued use of the MUNICIPAY mark and the www.getmunicipay.com website will harm Nationwide's investment and relationship with its customers, Defendants have not provided any evidence of hardship in the event that the preliminary injunction is granted. Thus, the Court finds that a balancing of the hardships justifies entry of the requested preliminary injunction

### D. Public Interest

In this case, the Court concludes that the public interest is vindicated by entry of a preliminary injunction that will end the parties' dueling use of the MUNICIPAY mark. To the extent that the products being sold under this mark are products used by governmental entities and taxpayers, the Court believes there is a particular public interest in ending any confusion resulting from both sides using the identical mark and confusingly similar website names. Therefore, an injunction will not harm the public interest and will more likely benefit the potential customers of this product.

### E. Security

"The Court may issue a preliminary injunction . . . only if the movant gives security." Fed. R. Civ. P. 65(c). The explicit purpose of requiring security is to "pay the costs and damages sustained by any party found to have been wrongfully enjoined." Id. Absent a clear showing of severe financial hardship, the Court is required to have a party post security that properly serves this purpose.

At oral argument, Plaintiff's counsel indicated that Nationwide is willing to pay a bond. Defense counsel, by contrast, waived any argument in favor of security indicating that Plaintiff was not required to post security. Despite this apparent waiver, the text of the Rule is clear and the Court will require Nationwide to post nominal security in the form of a $1,000.00 bond.

## IV. CONCLUSION

The Motion for Preliminary Injunction (Docket # 8) is hereby GRANTED. Defendants are hereby ENJOINED from using the MUNICIPAY mark until final resolution of this action. Defendants are also hereby ENJOINED from using the website [www.getmunicipay.com](www.getmunicipay.com). Defendants shall deactivate the website until final resolution of this action.

Plaintiff shall post a bond in the amount of $1,000.00 as soon as practicable and no later than the close of business on March 29, 2010.

In accordance with 15 U.S.C. § 1116(c), the Clerk is hereby directed to notify the Director of the United States Patent and Trade Office of this Order, which impacts U.S. Trademark Registration No. 3732575 held by Plunkett and Company LLC and dated December 29, 2009.

SO ORDERED.

          /s/ George Z. Singal
          U.S. District Judge

Dated this 24th day of March, 2010.