## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *NATIONWIDE PAYMENT SOLUTIONS, LLC,* | ) ) ) | |
| *Plaintiff* | ) ) | |
| *v.* | ) ) | *No. 2:09-cv-600-GZS* |
| *JAMES PLUNKETT, et al.,* | ) ) | |
| *Defendants* | ) | |

### RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION FOR DEFAULT JUDGMENT

Plaintiff Nationwide Payment Solutions, LLC ("Nationwide") moves pursuant to Federal Rule of Civil Procedure 55(b)(2) for a default judgment against defendant Plunkett & Company, LLC ("Plunkett & Co.") as to both Nationwide's affirmative claims against Plunkett & Co. and the counterclaim of Plunkett & Co. against Nationwide, based on Plunkett & Co.'s failure to obtain representation by counsel. *See* Plaintiff's Application for Default Judgment Pursuant to Fed.R.Civ.P. 55(b)(2) ("Motion") (Docket No. 62) at 1, 7.

Nationwide requested, and I deemed appropriate, the holding of a hearing to determine damages and equitable relief. *See id.* at 1; *see also, e.g., KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003) ("While a default . . . constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is susceptible of mathematical computation.") (citation and internal punctuation omitted); *In re Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) ("A hearing may be required . . . to set damages when the amount is in dispute or is not ascertainable from the pleadings.").

On November 8, 2010, following notice to both Nationwide and Plunkett & Co., I held a hearing at which Nationwide appeared, represented by counsel, and Plunkett appeared *pro se* on

behalf of himself.  No appearance was made on behalf of Plunkett & Co.  Nationwide called two witnesses, Plunkett and Jamie Nonni, and offered four exhibits, all of which were admitted without objection.  Plunkett offered one exhibit, which was admitted without objection.  Following the close of the evidence, I heard oral argument from Nationwide's counsel.  Plunkett declined an opportunity to argue orally on behalf of himself.  With the benefit of the testimony, exhibits, and oral argument offered at hearing, I recommend that the court adopt the following proposed findings of fact and conclusions of law and grant the Motion.

## I. Proposed Findings of Fact

1.     Nationwide is a Delaware limited liability company with a principal place of business in Scarborough, Maine.  Amended Complaint ("Complaint") (Docket No. 7) ¶ 1.[1]  It provides electronic payment transactions services to municipalities and merchants, including, *inter alia*, credit card verification bankcard transactions.  *Id.* ¶ 2.

2.     Plunkett & Co. is a Maine limited liability company with a principal place of business in Auburn, Maine, and Plunkett is an individual living in Auburn, Maine.  *Id.* ¶¶ 3-4.  Both Plunkett and Plunkett & Co. (together, "defendants") are former Nationwide sales agents and are engaged in the provision of financial transaction services, including electronic payment transaction services to municipalities.  *Id.* ¶ 5.

3.     Nationwide owns the trademark "MUNICIPAY."  *Id.* ¶ 8.  It has been using the MUNICIPAY mark since no later than January 30, 2008, *id.* ¶ 9, and has been using it in interstate commerce since late July 2008 or earlier in conjunction with the provision of electronic payment transactions services to municipalities across the country, *id.* ¶ 10.

---

[1] The default of Plunkett & Co. obliges the court to accept all well-pleaded allegations of Nationwide's complaint as true.  *See, e.g., Home Rests.*, 285 F.3d at 114.

4. On or about March 21, 2008, Plunkett & Co. entered into an independent sales agreement ("Sales Agreement") with Nationwide. *Id.* ¶ 15. The Sales Agreement obligated Plunkett & Co. to (i) solicit customers for Nationwide's products and services, (ii) assist in the initial setup of the equipment necessary to provide those products and services, (iii) serve as the initial customer point of contact regarding maintenance and service issues, (iv) present itself to the marketplace as Nationwide Payment Solutions when soliciting Nationwide accounts, (v) act in the provision of Nationwide's services only in ways that would not negatively affect Nationwide's business reputation, and (vi) allow Nationwide to review and approve certain marketing materials prior to circulation. *Id.* ¶¶ 16-19. The Sales Agreement prohibited Plunkett & Co. from disclosing any Nationwide trade secrets or confidential information to any third party. *Id.* ¶ 20.

5. The Sales Agreement obligated Plunkett & Co. to repay all advances against expenses within 180 days from the time of the advance. *Id.* ¶ 21. The Sales Agreement prohibited Plunkett & Co. from competing with Nationwide for a period of three years after termination of the agreement. *Id.* ¶ 22.[2] The Sales Agreement prohibited Plunkett & Co. for three years after the termination of that agreement from directly or indirectly soliciting or contracting with any customer, sales agent, or affiliate of Nationwide. *Id.* ¶ 87. Pursuant to the Sales Agreement, immediately upon termination of the agreement, Plunkett & Co. was required to return all sales manuals, price lists, customer lists, mailing lists, and any and all other documents, materials, and media. *Id.* ¶ 23. The Sales Agreement provides that the party

---

[2] The relevant section of the underlying agreement contains a typographical error, stating that it extends "for a period of *five (3)* years following the termination of this agreement[.]" Sales Agreement, Exh. A to Complaint, § 8-2 (emphasis added). Nonni, a founder and owner of Nationwide and its chief executive officer, testified that the parties agreed to a three-year, rather than five-year, non-compete clause.

prevailing in an action to enforce the terms of the agreement shall be entitled to costs and reasonable attorney fees. *Id.* ¶ 24.

6.      During the term of the Sales Agreement, the defendants posted a website that marketed their products and services to prospective Nationwide clients under the name "GovPay." *Id.* ¶ 25. On multiple occasions, the defendants acted in ways that negatively affected Nationwide's business reputation, including (i) inappropriate behavior with alcohol in the presence of Nationwide's customers, (ii) alienation of representatives of Nationwide's customers and cooperating entities, (iii) forwarding of potential customer confidential information without permission, (iv) efforts to discredit Nationwide to prospective customers, (v) internet marketing on behalf of Plunkett & Co. seeking to offer products and services competing with those of Nationwide, and (vi) failures to work within the guidelines of the Sales Agreement. *Id.* ¶ 26.

7.      The defendants posted a website that marketed their services under the name GovPay to prospective Nationwide clients and posted Nationwide's client names on the GovPay website. *Id.* ¶ 27. The GovPay website was designed and is maintained by Plunkett on behalf of Plunkett & Co. *Id.* ¶ 28.

8.      The defendants failed on multiple occasions to provide marketing material to Nationwide for review prior to publication and failed to notify Nationwide that they were marketing the MUNICIPAY product as that of GovPay. *Id.* ¶ 29.

9.      The defendants shared Nationwide's confidential information and trade secrets with a competitor with the intent of creating a product and/or service that would compete with the MUNICIPAY product line. *Id.* ¶ 30.

10.     On multiple occasions, the defendants failed to pay off advanced expenses under the Sales Agreement within 180 days of advance. *Id.* ¶ 31.

11.     While Plunkett & Co. was still actively employed as an independent sales agent under the Sales Agreement, the defendants were aware of and recognized Nationwide's use of the MUNICIPAY mark. *Id.* ¶ 38. The defendants were aware of Nationwide's use of the MUNICIPAY mark no later than July 9, 2008. *Id.* ¶ 39.

12.     In September 2008, Nationwide activated the internet domain www.municipay.com to house its website, an action of which the defendants had actual knowledge. *Id.* ¶ 40. At no point did the defendants ever indicate to Nationwide that they claimed any rights to the MUNICIPAY mark or object to Nationwide's use of that mark. *Id.* ¶ 41.

13.     On or about November 8, 2008, Plunkett registered the internet domain name www.getmunicipay.com. *Id.* ¶ 42. As of that time, he knew of Nationwide's ownership of and senior rights to the MUNICIPAY mark, as well as Nationwide's use of the www.municipay.com domain for its website. *Id.* ¶ 43.

14.     On December 16, 2008, Plunkett & Co. filed an application for registration of the MUNICIPAY mark despite being aware of Nationwide's ownership of and senior rights to the mark. *Id.* ¶ 32.

15.     No later than April 2009, the defendants began marketing Nationwide's MUNICIPAY product as if it were their own product on the website of their competing entity, Government Payment Processing. *Id.* ¶ 45.

16.     On April 6, 2009, Plunkett sent an email to a potential Nationwide customer disparaging Nationwide and offering an alternative product to the MUNICIPAY product line on

behalf of his competing company, GovPay.  *Id*. ¶ 33.  In that email, Plunkett was acting as agent for, or alter ego of, Plunkett & Co.  *Id*. ¶ 34.

17.     On April 8, 2009, Nationwide terminated Plunkett & Co.'s relationship with Nationwide pursuant to section 4.2 of the Sales Agreement.  *Id*. ¶ 35.  Subsequent to termination of the Sales Agreement, Plunkett & Co. directly and indirectly solicited customers of Nationwide in an effort to convince them to use the competing products and services of the defendants.  *Id*. ¶¶ 36, 88.  Subsequent to termination of the Sales Agreement, Plunkett & Co. has refused to return all sales manuals, price lists, customer lists, mailing lists, and any and all other documents, materials, and media.  *Id*. ¶¶ 37, 89-90.

18.     During the course of the Sales Agreement, Nationwide provided Plunkett & Co. with $36,624 in total advances against expenses under the Sales Agreement, Addendum C, § 4, of which Plunkett & Co. was obligated to repay $19,574.71.  *Id*. ¶ 92.  Plunkett & Co. has failed to repay any of those advances.  *Id*. ¶ 93.  More than 180 days have passed since the occurrence of Nationwide's most recent expense advance to Plunkett & Co.  *Id*. ¶ 94.  Nationwide also advanced Plunkett & Co. $5,000.00 against expected commissions to be earned by Plunkett & Co. under section 6 of the Sales Agreement.  *Id*. ¶ 96.  Plunkett & Co. has failed to repay any of those advances on commissions.  *Id*. ¶ 97.

19.     On or about April 20, 2009, Nationwide applied to the United States Patent and Trademark Office ("USPTO") to register the MUNICIPAY mark for use in International Class 36, electronic processing of electronic funds transfer, ACH, credit card, debit card, electronic check, and electronic payments.  *Id*. ¶ 11.

20.     Nationwide's application is suspended due to a conflict with Plunkett & Co.'s application for registration of the MUNICIPAY mark.  *Id*. ¶ 12.

21.     Plunkett & Co.'s first use of the MUNICIPAY mark occurred after Nationwide's first use of the MUNICIPAY mark. *Id.* ¶ 13. Plunkett & Co.'s first use of the MUNICIPAY mark in interstate commerce occurred after Nationwide's first use of the MUNICIPAY mark in interstate commerce. *Id.* ¶ 14.

22.     The defendants' products and services are similar to, and compete with, those offered by Nationwide, and are marketed to substantially the same consumer market. *Id.* ¶ 48. Plunkett is directly and centrally involved in the operation and management of Plunkett & Co. *Id.* ¶ 49.

23.     Nationwide has demanded on multiple occasions that the defendants cease and desist all use of the MUNICIPAY mark in connection with the sale of financial transaction services and products, including ceasing all use of the www.getmunicipay.com domain. *Id.* ¶ 46. The defendants have refused to cease the use of the MUNICIPAY mark or the domain name www.getmunicipay.com. *Id.* ¶ 47.

24.     The defendants have used the MUNICIPAY mark without the consent of, and in the face of the clear cease and desist demand of, Nationwide. *Id.* ¶ 51. By using the MUNICIPAY mark in connection with the advertising and sale of financial transaction products and services, the defendants have caused a likelihood of confusion in the minds of the public as to the connection between Nationwide's services and products and those of the defendants. *Id.* ¶ 52.

25.     In or about June 2009, Plunkett & Co. entered into an agreement with PowerPay, LLC ("PowerPay"), a Maine limited liability company engaged in the business of providing electronic payment services to public and private sector merchants, for PowerPay to develop, and

Plunkett & Co. to market, an electronic payment processing system known as "Government Payment Processing." Hearing Testimony of James Plunkett ("Plunkett Test."); Exh. 5.

26.     Pursuant to that agreement, Plunkett & Co. is paid 60 percent of the net profit PowerPay obtains from sales of those products and services to government entities, after any payment of sales commissions to Plunkett & Co. sales agents. Plunkett Test. The three Plunkett & Co. sales agents are Plunkett, Lee Hall, and Dennis Cashion. *Id*. Plunkett is not paid a sales commission, and so in instances in which he sells or writes contracts, Plunkett & Co. receives 60 percent of PowerPay's net profits. *Id*. Hall and Cashion are paid 30 percent sales commissions, so in instances in which they sell or write contracts, Plunkett & Co. receives 30 percent of PowerPay's net profits. *Id*. During the term of the Sales Agreement, Hall and Cashion were sales agents for Nationwide. Hearing Testimony of Jamie Nonni ("Nonni Test.").

27.     In March 2010, Government Payment Processing, characterizing itself as a division of PowerPay, submitted a bid for a contract for the provision of electronic government payment processing services to the cities of Portland and South Portland, Maine. Plunkett Test.; Exh. 5. Nationwide also submitted a bid for that contract. Nonni Test. During the summer of 2010, the cities awarded the contract to Government Payment Processing (the "Portland/South Portland Contract"). Plunkett Test.; Nonni Test. Nationwide was ranked second among bidders and was not awarded the contract. Nonni Test.

28.     Plunkett, on behalf of Plunkett & Co., drafted much of the bid for the Portland/South Portland Contract, including the following statement: "Prior to Government Payment Processing, Jim [Plunkett] founded and was Program Manager for Municipay." Exh. 5 at 2; Plunkett Test. The statement that Plunkett was a founder of Municipay is false. Nonni Test.

29.     In mid- to late summer 2010, Plunkett & Co. began receiving payments totaling 60 percent of PowerPay's net profits on the Portland/South Portland Contract.   Plunkett Test.

30.     Contracts to provide electronic payment services to municipalities typically have a minimum four- to five-year term.  Nonni Test.

31.     As of January 6, 2010, Plunkett's www.getmunicipay.com domain name remained active and sent users to the defendants' commercial website, wherein, using the trade name "Government Payment Processing," they advertised products and services competing with those of Nationwide.  Complaint ¶ 44.

32.     By order dated March 24, 2010, granting Nationwide's motion for preliminary injunction, Judge Singal enjoined the defendants from using the MUNICIPAY mark or the website www.getmunicipay.com, which he ordered deactivated, until final resolution of the instant action.  *See* Order on Motion for Preliminary Injunction (Docket No. 40) at 12.

## II.  Proposed Conclusions of Law

1.     "[C]orporations cannot enter *pro se* appearances and cannot be represented by individuals not licensed as an attorney."  *United States v. J.K. Wright, Inc*., Civil No. 07-116-B-W, 2007 WL 4608724, at *1 (D. Me. Dec. 28, 2007).

2.     On June 2, 2010, I granted the motions of John McVeigh and Ajay Jagtiani to withdraw as counsel for the defendants, directing the defendants to obtain new counsel no later than June 14, 2010.  *See* Report of Conference of Counsel and Order ("June 2 Order") (Docket No. 50) at 2.  I noted that the defendants' counsel had apprised Plunkett that, if their motion to withdraw were granted, he could not represent Plunkett & Co., which would be at risk of default if unrepresented by counsel.  *See id*.  I directed McVeigh and/or Jagtiani to notify Plunkett of my June 2 Order.  *See id*. at 3.

3.     No new counsel for Plunkett & Co. having entered an appearance as of July 15, 2010, I granted Nationwide's motion for the entry of a default against Plunkett & Co. *See* Order (Docket No. 56).

4.     No new counsel has entered an appearance for Plunkett & Co. as of this day. *See generally* ECF Docket. As a result, Plunkett & Co. has been disabled from, and has not, participated in the instant suit since June 2, 2010, neglecting, for example, to respond by June 25, 2010, to certain pending discovery requests, as required by my June 2 Order. *See* June 2 Order at 2: Memorandum Decision and Order on Plaintiff's Motion for Sanctions (Docket No. 67) at 5.

5.     The entry on July 15, 2010, of a default against Plunkett & Co., together with the well-pleaded allegations of the complaint and the evidence adduced at hearing, establish its liability to Nationwide on the six claims brought against it, for (i) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 *et seq.* (Count I), *see* Complaint ¶¶ 50-56, (ii) false designation and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count III), *see id.* ¶¶ 67-72, (iii) infringement of common law trademark rights (Count IV), *see id.* ¶¶ 73-79, (iv) violation of Maine's Deceptive Trade Practices Act ("DTPA"), 10 M.R.S.A. § 1211 *et seq.* (Count V), *see id.* ¶¶ 80-84, (v) breach of contract (Count VI), *see id.* ¶¶ 85-98, and (vi) unjust enrichment (Count VIII), *see id.* ¶¶ 104-08. *See, e.g.*, *Home Rests.*, 285 F.3d at 114 ("There is no question that, default having been entered, each of plaintiff's allegations of fact must be taken as true and each of its claims must be considered established as a matter of law.") (citation and internal punctuation omitted).[3]

---

[3] Nationwide acknowledges that its claims under the Lanham Act (Counts I and III), its common law claim of trademark infringement (Count IV), and its DTPA claim (Count V) are all based on the same intentional conduct by Plunkett & Co. and employ essentially the same legal test, focusing on the likelihood of confusion as to the source of goods or services involved. *See* Plaintiff's Pre-Hearing Memorandum of Law ("Pre-Hearing Brief") (Docket No. 81) at 1. It does not suggest that any greater remedies are available for this conduct under common law trademark infringement law or the DTPA than are available pursuant to the Lanham Act. *See generally id.* Hence, I have used (*continued on next page*)

6. Default judgment against Plunkett & Co. with respect to Nationwide's affirmative claims against it is warranted accordingly. *See, e.g., Alli v. United States*, 93 Fed. Cl. 172, 177 (Fed. Cl. 2010) ("[W]here a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55.") (citation, internal quotation marks, and footnote omitted); *Employee Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) (default judgment a permissible sanction for failure to comply with local rule requiring representation of corporate defendant by counsel); *Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, No. 3:09-cv-2-J-34TEM, 2010 WL 1038503, at *5 (M.D. Fla. Mar. 19, 2010) ("The failure of an artificial entity to obtain counsel, in violation of a court order or rule to do so, has repeatedly been held to support default judgment, even absent violations of other rules or orders.") (citations and internal quotation marks omitted).

7. The failure of Plunkett & Co. to prosecute its counterclaim against Nationwide also warrants dismissal of those counts. *See, e.g., Alli*, 93 Fed. Cl. at 177 ("Where a corporate-plaintiff fails to obtain counsel, the ordinary remedy is to dismiss its complaint for lack of prosecution."). These consist of:

A. Nine counts pressed solely by Plunkett & Co. against Nationwide: Count V (Lanham Act trademark infringement), Count VI (common law trademark infringement), Count VII (Lanham Act false designation and unfair competition), Count VIII (DTPA violation), Count IX (cybersquatting), Count X (breach of contract – exclusivity), Count XI (breach of contract – residual commissions), Count XII (breach of contract – ongoing commissions), and Count XIII (unjust enrichment). *See* Counterclaims and Demand for Jury Trial Thereon ("Counterclaim"),

---

the Lanham Act as my frame of reference in analyzing the availability of the relief requested pursuant to all four of those counts. Nationwide notes that the damages sought on its state law claim of unjust enrichment (Count VIII) duplicate those sought for breach of contract (Count VI). *See id.* at 3. Hence, I have used breach of contract as my frame of reference in analyzing the availability of the relief requested pursuant to those two counts.

commencing on page 29 of Defendants' Answers to Plaintiff's Amended Complaint and Counterclaims Against Plaintiff and Demand for Jury Trial Thereon ("Answer") (Docket No. 14), ¶¶ 32-89.

B.      Four counts pressed by both defendants, to the extent pressed by Plunkett & Co.: Count I (seeking declaratory judgment of non-infringement under the Lanham Act and common law), Count III (seeking declaratory judgment that the defendants did not engage in false designation or unfair competition under the Lanham Act), Count IV (seeking declaratory judgment that the defendants did not violate the DTPA), and Count XIV (seeking declaratory judgment that the covenant not to compete in the Sales Agreement is unenforceable). *See id.* ¶¶ 8-13, 20-31, 90-93.

8.      As to Nationwide's affirmative claims against Plunkett & Co, Nationwide seeks, *see* Pre-Hearing Brief at 3-4, and has proved its entitlement to, the following damages:

A.      The sum of $19,574.71 as compensatory damages for breach of the Sales Agreement in the form of failure to repay advances against expenses.

B.      The sum of $5,000.00 as compensatory damages for breach of the Sales Agreement in the form of failure to repay advances against commissions.

C.      A sum equaling 30 percent of the net profit earned by PowerPay from contracts with third parties for the provision of electronic government payment processing services, which contracts are credited to sales agents Dennis Cashion or Lee Hall and which amounts otherwise have been or would be paid by PowerPay to Plunkett & Co. for the period from April 8, 2009, through April 8, 2012, as compensatory damages for breach of the Sales Agreement in the form of failure to refrain for a period of three years following termination of that agreement from

directly or indirectly soliciting or contracting with, *inter alia*, any agent that solicited merchant accounts for Nationwide.

      D.     A sum equaling 60 percent of the net profits earned by PowerPay pursuant to the Portland/South Portland Contract, which amount otherwise has been or would be paid by PowerPay to Plunkett & Co., for the period from August 2010 through August 2015, as compensatory damages for violations of the Lanham Act's proscriptions against false designation of origin and infringement of an unregistered trademark, said contract having been obtained on the strength of a bid containing Plunkett & Co.'s false statement that Plunkett had been a founder of Municipay. *See* 15 U.S.C. §§ 1125(a)(1)(A) (forbidding false designations of origin or false descriptions that are, *inter alia*, "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person"), 1117(a) (providing, in relevant part, that upon establishing a violation of 15 U.S.C. § 1125(a), a plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action").[4]

---

[4] At hearing, Nationwide's counsel clarified that his client does not seek actual damages pursuant to the Lanham Act. With respect to the five-year period for which I recommend that damages be assessed, Nonni testified that contracts to provide electronic payment services to municipalities typically run for four to five years. Resolving any doubts against Plunkett & Co., both because of its status as infringer and because of its defaults with respect to discovery, I deem it appropriate to imply a five-year term for the Portland/South Portland Contract. I further conclude that the full 60 percent of PowerPay's net profits, which represents 100 percent of Plunkett & Co.'s revenues from that contract, must be awarded. Infringers bear the burden of proving both (i) costs/expenses that should be deducted from gross revenues and (ii) profits, if any, that are excludable on the basis that they are not attributable to the infringement. *See, e.g.*, 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."); *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.,* 282 F.3d 23, 37 (1st Cir. 2002) ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which may not have been due to his use of the infringing mark.") (citation and internal quotation marks omitted). While Plunkett testified at hearing that PowerPay withheld some unspecified portion of Plunkett & Co.'s initial share of the revenue stream from the City of Portland to offset advances that PowerPay had made to Plunkett & Co., no proof was offered of the nature or amount of those advances. No evidence was offered tending to suggest that any portion of Plunkett & Co.'s profits from the Portland/South Portland Contract was not attributable to the infringement.

E.     Treble damages with respect to the sum awarded in subsection (D), above, as further compensatory damages for the aforementioned violations of the Lanham Act, 15 U.S.C. § 1125(a).[5] Section 1117(a) of the Lanham Act provides, in relevant part: "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."  15 U.S.C. § 1117(a).  "Such sum in either of the above circumstances shall constitute compensation and not a penalty."  *Id*.

At hearing, Nationwide's counsel plausibly took the position that, as a result of Plunkett & Co.'s failure to produce documents, his client was left in the dark concerning the total volume of profits generated by Plunkett & Co.'s infringing activities and was able to adduce evidence with respect to only one sale, the Portland/South Portland Contract.  He surmised that this represented only a portion of the total of such profits.

Moreover, as Nationwide's counsel pointed out, Plunkett & Co. has admitted that, despite Nationwide's demands on multiple occasions that it cease and desist all use of the MUNICIPAY mark in connection with the sale of financial transaction services and products, including ceasing all use of the www.getmunicipay.com domain name, it refused to do so, *see* Complaint ¶¶ 46-47; Answer ¶¶ 46-47.  There can be no doubt that its infringement was willful.  *See Bob's Discount Furniture, Inc. v. Bob's Discount Off-Price Superstores, Inc*., 353 F. Supp.2d 118, 124 (D. Me. 2005) (noting, in considering whether material issue of fact existed as to willfulness of trademark infringement: "[I]n the civil context, willful conduct denotes intentional, knowing and voluntary

---

[5] Nationwide's counsel acknowledged at hearing that his client's request for treble damages, set forth in its itemized list as an item of requested equitable relief, *see* Pre-Hearing Brief at 4, ¶ (h), should be classified as a request for damages.

acts. It may also indicate a reckless disregard for obvious or known risks.") (citations and internal punctuation omitted).

In the circumstances, in which (i) Plunkett & Co.'s failure to obtain substitute counsel disabled it from participating meaningfully in discovery and prevented Nationwide from exploring the full extent of Plunkett & Co.'s profits, (ii) certain losses, such as harm to Nationwide's goodwill in the MUNICIPAY mark, are difficult to quantify, and (iii) Plunkett & Co. willfully infringed the MUNICIPAY mark, going so far as to employ the falsehood that Plunkett was a Municipay founder in a winning bid against Nationwide, an award of treble damages is warranted both to make Nationwide whole and to deter future such conduct by Plunkett & Co. *See Tamko*, 282 F.3d at 37 ("Congress recognized that the defendant's profits may be an inexact proxy for the detriment suffered by plaintiffs" and that harm to the goodwill associated with a mark, unjust enrichment of the defendant, and deterrence are among the policy objectives that a court may consider in enhancing a recovery based on the infringer's net profits); *see also, e.g., La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 343 (6th Cir. 2010) ("[E]nhancement could, consistent with the principles of equity promoted in § 1117(a), provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct.") (citation and internal punctuation omitted).

F.     A sum equaling Nationwide's costs and reasonable attorney fees. Nationwide is entitled to recover its costs of the instant action and reasonable attorney fees pursuant to both 15 U.S.C. § 1117(a) and section 21 of the Sales Agreement. *See* 15 U.S.C. § 1117(a) (plaintiff prevailing in proving violation of 15 U.S.C. § 1125(a) is entitled to recover, *inter alia*, "the costs of the action"; in addition, "[t]he court in exceptional cases may award reasonable attorney fees

to the prevailing party"); Sales Agreement § 21 (in the event of any action to enforce the terms of the parties' agreement or with respect to its subject matter, "the party prevailing on an issue shall be entitled to recover with respect to such issue, in addition to its costs, reasonable attorney's fees incurred in the preparation of its presentation or defense of such suit or action").

Plunkett & Co.'s willful infringement, its employment of the false statement that Plunkett was a founder of Municipay in bidding against Nationwide for a municipal contract, and its failure to obtain substitute counsel, disabling it from participating meaningfully in discovery in this case, constitute "exceptional" circumstances justifying an award of reasonable attorney fees pursuant to the Lanham Act. *See, e.g., Tamko*, 282 F.3d at 32 ("Fraud or bad faith may justify an attorneys' fee award in some cases, but a finding of bad faith or fraud is not a necessary precondition. Willfulness short of bad faith or fraud will suffice when equitable considerations justify an award and the district court supportably finds the case exceptional.") (footnote omitted); *Women to Women, Inc. v. Woman to Woman Co.*, No. Civ. 02-52-P-H, 2003 WL 1741110, at *4 (D. Me. Apr. 1, 2003) (rec. dec., *aff'd* Apr. 28, 2003) (case qualified as "exceptional," for purposes of award of attorney fees under section 1117(a), when allegations of complaint, accepted as true in light of defendant's default, showed that it refused to desist from its infringing practices, defendant persisted even as of date of damages hearing in using infringing mark and domain name, and defendant disregarded the legal process, despite acknowledgement of receipt of service of process).[6]

9.      Nationwide also seeks, *see* Pre-Hearing Brief at 3-4, and has proven its entitlement to, the following equitable relief:

---

[6] Nationwide's counsel stated, at hearing, that his client does not seek interest.

A.     On account of Plunkett & Co.'s Lanham Act violations, *see* 15 U.S.C. § 1116(a) (courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsection (a) . . . of section 1125 of this title"):

1.     A permanent nationwide injunction enjoining Plunkett & Co., its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns, and all those in concert or participation with any of them, from:

a.     Imitating, copying, using, reproducing, registering, attempting to register and/or displaying Nationwide's MUNICIPAY mark or any mark or designation that colorably imitates or is confusingly similar to said mark and designation; or

b.     Using any other false description or representation or any other thing calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to the MUNICIPAY mark;

2.     An order requiring Plunkett & Co. to withdraw or voluntarily cancel its registration of the MUNICIPAY mark (No. 77633879) with the USPTO;

3.     An order directing that Plunkett & Co. deliver up for destruction all materials and matter in its possession, custody, or control that infringe or unfairly compete with the MUNICIPAY mark, including, without limitation, all advertising and promotional materials; and

4.     In conjunction with the award of damages set forth in paragraph 8(D), above, an order that Plunkett & Co. disgorge all revenues received from PowerPay from August 2010 through August 2015 resulting from PowerPay's revenues from the Portland/South Portland Contract for the provision of electronic payment and processing services.[7]

---

[7] Nationwide also requests that the court order Plunkett & Co. to transfer to Nationwide the registration and (*continued on next page*)

B.      On account of Plunkett & Co.'s breaches of contract:

1.      An order enjoining Plunkett & Co. from directly or indirectly soliciting or contracting with any customer, sales agent, or affiliate of Nationwide for a period of three (3) years from April 8, 2009;

2.      An order directing Plunkett & Co. to return to Nationwide all of Nationwide's sales manuals, price lists, customer lists, mailing lists, and other property; and

3.      In conjunction with the award of damages set forth in paragraph 8(C), above, an order that Plunkett & Co. disgorge all revenues received from PowerPay from April 8, 2009, through April 8, 2012, resulting from PowerPay's revenues from its contracts with third parties for the provision of electronic government payment processing services, which contracts are credited to sales agents Dennis Cashion or Lee Hall.

C.      An order directing that Plunkett & Co. file with the court and serve upon counsel for Nationwide, within 30 days after the entry of a final order on the instant default judgment application, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the affirmative injunctive relief ordered. *See, e.g.,* 15 U.S.C. § 1116(a).

### III. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the Motion and, consistent with the foregoing:

---

ownership of the domain name getmunicipay.com and any other domain names owned or controlled by Plunkett & Co. that are confusingly similar to the MUNICIPAY mark. *See* Pre-Hearing Brief at 4, ¶ (c). I find such an order unwarranted, Nationwide's counsel having acknowledged at hearing, consistent with the well-pleaded facts set forth in the Complaint, that Plunkett registered the domain name and that it is not clear that Plunkett & Co., as opposed to Plunkett, controls it. In its Pre-Hearing Brief, Nationwide requested an order awarding "treble damages based upon an accounting of Plunkett & Company's profits[.]" Pre-Hearing Brief at 4, ¶ (h). However, at hearing, in articulating all relief requested, Nationwide's counsel did not expressly seek an accounting or explain the nature of any accounting requested.

A.      Enter judgment in favor of Nationwide, and against Plunkett & Co., on Counts I, III, IV, V, VI, and VIII of the Complaint and Counts I, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, and XIV of the Counterclaim;

B.      Award Nationwide damages for breach of contract in the sum of $24,574.71 plus a sum equaling 30 percent of the net profit earned by PowerPay from contracts with third parties for the provision of electronic government payment processing services, which contracts are credited to sales agents Dennis Cashion or Lee Hall and which amounts otherwise have been or would be paid by PowerPay to Plunkett & Co. for the period from April 8, 2009, through April 8, 2012;

C.      Award Nationwide damages for Lanham Act violations in a sum equaling three times the following amount: 60 percent of the net profits earned by PowerPay pursuant to the Portland/South Portland Contract, which amount otherwise has been or would be paid by PowerPay to Plunkett & Co., for the period from August 2010 through August 2015;

D.      Award Nationwide its costs of this action and its reasonable attorney fees incurred in connection therewith;[8]

E.      Enjoin Plunkett & Co. from directly or indirectly soliciting or contracting with any customer, sales agent, or affiliate of Nationwide for a period of three (3) years from April 8, 2009;

F.      Order Plunkett & Co. to return to Nationwide all of Nationwide's sales manuals, price lists, customer lists, mailing lists, and other property;

G.      Order Plunkett & Co. to disgorge all revenues received from PowerPay from April 8, 2009, through April 8, 2012, resulting from PowerPay's revenues from its contracts with

---

[8] Should this recommended decision be adopted, Nationwide shall submit a claim for attorney fees in accordance with Local Rule 54.2 and a bill of costs in accordance with Local Rule 54.3.

third parties for the provision of electronic government payment processing services, which contracts are credited to sales agents Dennis Cashion or Lee Hall;

H.      Permanently enjoin, on a nationwide basis, Plunkett & Co., its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns, and all those in concert or participation with any of them, from:

1.      Imitating, copying, using, reproducing, registering, attempting to register, and/or displaying Nationwide's MUNICIPAY mark or any mark or designation that colorably imitates or is confusing similar to said mark and designation; or

2.      Using any other false description or representation or any other thing calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to the MUNICIPAY mark;

I.      Order Plunkett & Co. to withdraw or voluntarily cancel its registration of the MUNICIPAY mark (No. 77633879) with the USPTO;

J.      Order Plunkett & Co. to deliver up for destruction all materials and matter in its possession, custody, or control that infringe or unfairly compete with the MUNICIPAY mark, including, without limitation, all advertising and promotional materials;

K.      Order Plunkett & Co. to disgorge all revenues received from PowerPay from August 2010 through August 2015 resulting from PowerPay's revenues from the Portland/South Portland Contract for the provision of electronic payment and processing services; and

L.      Order Plunkett & Co. to file with the court and serve upon counsel for Nationwide within 30 days after the entry of a final order on the instant default judgment application, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the affirmative injunctive relief ordered.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of January, 2011.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge