## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| NATIONWIDE PAYMENT<br>SOLUTIONS, LLC, | ) |
| | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )          *No. 2:09-cv-600-GZS* |
| | ) |
| JAMES PLUNKETT, *et al.*, | ) |
| | ) |
| *Defendants* | ) |

### RECOMMENDED DECISION ON
### MOTION FOR SUMMARY JUDGMENT

Plaintiff Nationwide Payment Solutions, LLC ("Nationwide") moves pursuant to Federal

Rule of Civil Procedure 56 for summary judgment against defendant James Plunkett on all of

Nationwide's affirmative claims against Plunkett and all counts of the defendants' counterclaim

pressed by Plunkett. *See* Nationwide Payment Solution[s], LLC's Motion for Summary

Judgment ("Motion") (Docket No. 71) at 1 & n.1. Plunkett did not respond to the Motion. *See*

*generally* ECF Docket. For the reasons that follow, I recommend that the Motion be granted.

### I. Applicable Legal Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence

about the fact is such that a reasonable jury could resolve the point in the favor of the non-

moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30

(1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A

fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting

*Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

When, as here, a nonmovant fails to respond to a motion for summary judgment, that failure does not automatically entitle the movant to summary judgment. *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]"); *Torres-Rosado v. Rotger-Sabat,* 335 F.3d 1, 8-9 (1st Cir. 2003). In these circumstances, the court still is obligated to "inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." *Cordero Soto v. Island Fin., Inc.,* 418 F.3d 114, 118 (1st Cir. 2005) (citation omitted).

## B. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209,

213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

Nationwide's unopposed statement of material facts, deemed admitted to the extent supported by the record citations given, in accordance with Local Rule 56(f), establishes the following.

### A. Context

Nationwide provides electronic payment transactions services to municipalities, other public entities, and private merchants, including, among other things, credit card verification bankcard transactions. Statement of Material Facts in Support of Motion for Summary Judgment ("Plaintiff's SMF") (Docket No. 72) ¶ 1; Declaration of Patrick Allen ("Allen Decl.") (Docket No. 21-2), attached to Reply Memorandum in Support of Motion for Preliminary Injunction ("PI Reply") (Docket No. 21), ¶ 4. In late November or early December 2007, MasterCard publicly released its plan to institute new payment rules for government credit card transactions. Plaintiff's SMF ¶ 2; Allen Decl. ¶ 5. Nationwide learned of those new rules during that time period. Plaintiff's SMF ¶ 3; Allen Decl. ¶ 5. Upon learning of those new rules, Nationwide recognized that a single card swipe solution needed to be designed to allow for the processing of two transactions, a substantive payment and a service or convenience fee, in one card swipe, and the charging of those two fees to the cardholder. Plaintiff's SMF ¶ 4; Allen Decl. ¶¶ 6-9.

In late December 2007, James Plunkett approached Nationwide seeking to enlist it to develop software for a governmental credit card payment system whereby a single swipe of an individual's credit card would generate a first transaction in the amount owed to the government

body and a second transaction for the service or convenience fee. Plaintiff's SMF ¶ 5; Deposition of James Plunkett ("Plunkett Dep.") (Docket No. 75) at 7, 11. At that time, Nationwide was already aware of the MasterCard rule changes as well as the general concept of a single-swipe solution to process both a substantive payment and a service or convenience fee. Plaintiff's SMF ¶ 6; Allen Decl. ¶¶ 6-9.

Nationwide agreed to design a product whereby municipalities could process two transactions, a substantive payment and a service or convenience fee, in one card swipe, with the charging of those two fees to the cardholder. Plaintiff's SMF ¶ 7; Allen Decl. ¶¶ 11-13. The parties generally agreed that Nationwide, either by itself or through a subcontractor, would design the envisioned solution and Plunkett would have a certain exclusivity agreement to market and sell the product and receive commission payments for doing so. Plaintiff's SMF ¶ 8; Plunkett Dep. at 12-13. Nationwide developed its electronic government payment processing system without technical input from Plunkett. Plaintiff's SMF ¶ 9; Plunkett Dep. at 12-13, 17-18. Plunkett did not have any idea how to design such a system. Plaintiff's SMF ¶ 10; Plunkett Dep. at 11.

On or about December 30, 2008, Nationwide filed a patent application covering its electronic government payment processing system with the United States Patent and Trademark Office ("USPTO"). Plaintiff's SMF ¶ 11; Allen Decl. ¶ 40. Plunkett has not reviewed Nationwide's patent application for its electronic government payment processing system. Plaintiff's SMF ¶ 12; Plunkett Dep. at 39. He does not know who filed or drafted that patent application. Plaintiff's SMF ¶¶ 13-14; Plunkett Dep. at 39. He has spoken only with Jamie Nonni of Nationwide regarding Nationwide's patent application. Plaintiff's SMF ¶ 15; Plunkett Dep. at 41. Nonni provided Plunkett with no substantive information regarding the content of

Nationwide's patent application, and Plunkett has obtained no substantive information regarding it from any third parties. Plaintiff's SMF ¶¶ 16-17; Plunkett Dep. at 39-42. Plunkett does not know what substantive claims, information, and statements are in the patent application, including features or limitations of the claimed invention. Plaintiff's SMF ¶ 18; Plunkett Dep. at 42.[1] The defendants have never served Nationwide with document requests seeking production of Nationwide's patent application. Plaintiff's SMF ¶ 19; Declaration of Jamie Nonni ("Second Nonni Decl.") (Docket No. 73) ¶ 8.

## B. Sales Agreement

On March 21, 2008, Nationwide entered into an independent sales agreement ("Sales Agreement") with Plunkett & Company, LLC ("Plunkett & Co."). Plaintiff's SMF ¶ 20; Plunkett Dep. at 13-14; Sales Agreement (Docket No. 75-1), Exh. 3 thereto. Plunkett was not a party to the Sales Agreement, which was entered into on behalf of Plunkett & Co. and not on behalf of Plunkett. Plaintiff's SMF ¶ 21; Plunkett Dep. at 14. Plunkett & Co. is a Maine limited liability company of which Plunkett is the sole owner and officer. Plaintiff's SMF ¶ 22; Plunkett Dep. at 14-15. Plunkett exercises full control over Plunkett & Co. Plaintiff's SMF ¶ 23; Plunkett Dep. at 14-15.

Among other things, the Sales Agreement required that Plunkett & Co. "shall hold itself out to the public in the name of [Nationwide], and shall represent itself 'only' as [Nationwide], in connection with the specific marketing of [Nationwide's] bankcard services[.]" Plaintiff's SMF ¶ 24; Sales Agreement § 2-8(A). The Sales Agreement also states that "[a]ll sales manuals, customer lists, software and other media including trademarks provide[d] to [Plunkett & Co.] by [Nationwide] shall at all times remain the property of [Nationwide]." Plaintiff's SMF ¶ 25; Sales

---

[1] I have corrected a typographical error, the omission of the word "not" in paragraph 18 of the Plaintiff's SMF.

Agreement § 9-3.  On or about April 8, 2009, Nationwide terminated the Sales Agreement pursuant to section 4.2 of that agreement.  Plaintiff's SMF ¶ 26; Amended Complaint ("Complaint") (Docket No. 7) ¶ 35; Defendants' Answers to Plaintiff's Amended Complaint and Counterclaims Against Plaintiff and Demand for Jury Trial Thereon ("Answer") (Docket No. 14) ¶ 35.

## C.  Nationwide's Development of MUNICIPAY Mark

In or about May 2008, Nationwide decided to use the term "Municipay" (the "MUNICIPAY mark") and began referring to its electronic government payment processing system as MUNICIPAY, although it still used alternate names for a brief period as well. Plaintiff's SMF ¶ 27; Second Nonni Decl. ¶ 9.

In May 2008, Nationwide informed a third-party customer, We Talk America, that it would be using the MUNICIPAY mark for its product.  Plaintiff's SMF ¶ 28; Allen Decl. ¶¶ 21-22.  Plunkett was aware that Nationwide intended to use the MUNICIPAY mark in connection with its electronic government payment processing system no later than May 2008.  Plaintiff's SMF ¶ 29; Plaintiff's Requests for Admissions; and Second Set of Interrogatories ("Admission Requests") (Docket No. 74-1), Exh. A to Declaration of John G. Osborn ("Second Osborn Decl.") (Docket No. 74), at 4, ¶ 2.[2]

No later than July 9, 2008, Nationwide directed Plunkett to use the MUNICIPAY mark to describe Nationwide's electronic government payment processing application and to identify, market, and sell that application to prospective and actual customers.  Plaintiff's SMF ¶ 30; Admission Requests at 4, ¶ 4.  Three days later, on or about July 12, 2008, Plunkett made a

---

[2] As Osborn, counsel for Nationwide, states in his declaration, *see* Osborn Decl. ¶ 8, as a sanction for Plunkett's failure to participate in discovery, I deemed him to have admitted the statements that he was requested to admit *via* the Admission Requests (referred to in my September 30, 2010, order as "Plaintiff's First Request for Admission"), *see* Memorandum Decision and Order on Plaintiff's Motions for Sanctions (Docket No. 67) at 12.

presentation to the National Association of Counties and the National League of Cities in which he used the MUNICIPAY mark. Plaintiff's SMF ¶ 31; Admission Requests at 4, ¶ 1. This use, on July 12, 2008, was the defendants' first use of the MUNICIPAY mark. Plaintiff's SMF ¶ 32; Second Osborn Decl. ¶¶ 7-8; Admissions ¶ 1. During that presentation, which occurred during the 2008 annual conference of the National Association of County Collectors, Treasurers, and Finance Officers ("NACCTFO"), Plunkett marketed Nationwide's electronic government payment processing application. Plaintiff's SMF ¶¶ 33-34; Allen Decl. ¶ 24; Declaration of James Plunkett ("Plunkett Decl.") (Docket No. 18-1), attached to Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Docket No. 18), ¶ 13 & Exh. A (Docket No. 18-8) thereto.

Plunkett attended the 2008 annual conference of the NACCTFO on behalf of Nationwide and pursuant to the Sales Agreement. Plaintiff's SMF ¶ 35; Admission Requests at 4, ¶¶ 3, 5. Plunkett was using the MUNICIPAY mark on behalf of Nationwide at the NACCTFO July 12, 2008, event and within the scope of the Sales Agreement. Plaintiff's SMF ¶ 36; Allen Decl. ¶¶ 25, 29-34 & Exhs. 2-4 (Docket Nos. 21-4 to 21-6) thereto. Plunkett promoted, marketed, and/or sold Nationwide's electronic government payment processing application at the NACCTFO conference. Plaintiff's SMF ¶ 37; Admission Requests at 4, ¶ 5. Nationwide was one of the sponsors of the NACCTFO conference. Plaintiff's SMF ¶ 38; Allen Decl. ¶ 28. Nationwide paid for Plunkett's expenses for his trip to the NACCTFO conference. Plaintiff's SMF ¶ 39; Allen Decl. ¶ 27.

On July 31, 2008, Nationwide negotiated an agreement to purchase the Internet domain name www.municipay.com. Plaintiff's SMF ¶ 40; Exh. 5 (Docket No. 75-2) to Plunkett Dep. Plunkett became aware of Nationwide's acquisition of that domain name no later than July 31,

2008. Plaintiff's SMF ¶ 41; Plunkett Dep. at 23-24. Nationwide activated the www.municipay.com domain in or around September 2008 and has been using it continuously since then. Plaintiff's SMF ¶ 42; Second Nonni Decl. ¶ 10.

Since the summer of 2008, Nationwide, through its website at www.municipay.com and various other marketing channels, has continuously used the MUNICIPAY mark to refer to, market, and sell its electronic government payment processing application. Plaintiff's SMF ¶ 43; Second Nonni Decl. ¶ 11. Since the summer of 2008, Nationwide also has used the MUNICIPAY mark to promote and sell its products *via* local and national trade shows, as well as telephonic and print marketing. Plaintiff's SMF ¶ 44; Declaration of Jamie Nonni ("First Nonni Decl.") (Docket No. 9) ¶¶ 19, 50, 72. Nationwide has widely marketed its product using the MUNICIPAY mark to potential customers. Plaintiff's SMF ¶ 45; First Nonni Decl. ¶ 72. By building strength in its mark through heavy use and investments in advertising and marketing, Nationwide has established goodwill for the MUNICIPAY mark among the relevant consuming public. Plaintiff's SMF ¶ 46; First Nonni Decl. ¶¶ 69-73.

Throughout the fall of 2008, Plunkett was aware of Nationwide's development and use of the website www.municipay.com and its use of the MUNICIPAY mark. Plaintiff's SMF ¶ 47; Second Nonni Decl. ¶ 12. Throughout the fall of 2008 and the spring of 2009, Plunkett was aware of Nationwide's ownership and use of the domain name www.getnationwide.com. Plaintiff's SMF ¶ 48; Second Nonni Decl. ¶ 13. In fact, while performing under the Sales Agreement, Plunkett regularly used the email address jplunkett@getnationwide.com. Plaintiff's SMF ¶ 49; Second Nonni Decl. ¶ 14. During October 2008, Plunkett began including the www.municipay.com domain name and link in the signature line to emails that he sent on behalf of Nationwide. Plaintiff's SMF ¶ 50; Second Nonni Decl. ¶ 15.

### D. Plunkett's Registration and Use of Internet Domain Name

On or about November 8, 2008, Plunkett registered the Internet domain name www.getmunicipay.com, listing himself as registrant, technical contact, and administrative contact. Plaintiff's SMF ¶ 51; Admission Requests at 5, ¶ 7; First Nonni Decl. ¶ 25 & Exh. C (Docket No. 9-5) thereto. Plunkett activated the domain name www.getmunicipay.com between November 8, 2008, and April 1, 2009. Plaintiff's SMF ¶ 52; Admission Requests at 5, ¶ 7.[3] Visitors to Plunkett's www.getmunicipay.com domain were automatically routed to a website at www.governmentpaymentprocessing.com. Plaintiff's SMF ¶ 53; Admission Requests at 5, ¶ 8. Plunkett activated the domain name www.governmentpaymentprocessing.com on May 14, 2009, identifying Plunkett & Co. as registrant and Plunkett as administrative and technical contact. Plaintiff's SMF ¶ 54; First Nonni Decl. ¶ 27 & Exh. D (Docket No. 9-6) thereto.

Plunkett, either on his own behalf or on behalf of Plunkett & Co., advertised and sold products and services that compete with Nationwide's electronic government payment processing application, including through the website at www.governmentpaymentprocessing.com. Plaintiff's SMF ¶ 56; Admission Requests at 5, ¶ 9; First Nonni Decl. ¶ 27. That activity continued as of the date of Plunkett's deposition, October 14, 2010. Plaintiff's SMF ¶ 57; Plunkett Dep. at 15.

During the term of the Sales Agreement, Plunkett, either on his own behalf or as sole decisionmaker for Plunkett & Co., became involved in the development, advertising, or sale of a virtual terminal product that competes with and is marketed to substantially the same consumers as Nationwide's electronic government payment processing application. Plaintiff's SMF ¶ 58; Admission Requests at 5-6, ¶ 10. The www.getmunicipay.com domain continued to route

---

[3] I have corrected a typographical error in a date in paragraph 51 of the Plaintiff's SMF by changing 2009 to 2008.

viewers to the defendants' website at www.governmentpaymentprocessing.com at least through January 11, 2010. Plaintiff's SMF ¶ 59; First Nonni Decl. ¶ 28 & Exh. F (Docket No. 9-8) thereto.

Both Plunkett and Nationwide offer and advertise their electronic transaction services to municipalities through the Internet. Plaintiff's SMF ¶ 60; First Nonni Decl. ¶¶ 18, 27. Both Plunkett and Nationwide market their respective products and services through presentations at municipal conferences and similar events. Plaintiff's SMF ¶ 61; First Nonni Decl. ¶¶ 50-51. The class of prospective customers of Plunkett's and Nationwide's services is exactly the same: municipalities and other governmental entities throughout the United States. Plaintiff's SMF ¶ 62; First Nonni Decl. ¶¶ 3, 11, 48.

### E. Clashing Trademark Applications

On or about December 16, 2008, Plunkett filed an application with the USPTO for registration of the MUNICIPAY mark. Plaintiff's SMF ¶ 63; Plunkett Decl. ¶ 13. On April 20, 2009, Nationwide filed its own application with the USPTO for registration of the MUNICIPAY mark, asserting an estimated date of first use at least as early as September 1, 2008. Plaintiff's SMF ¶ 65; Exh. B (Docket No. 18-11) to Plunkett Decl. At the time of filing, Nationwide had not completed an exhaustive investigation of first use and chose a conservative date. Plaintiff's SMF ¶ 66; Allen Decl. ¶ 36.

In response, on September 15, 2009, Plunkett amended his USPTO application to assert a date of first use of July 12, 2008, attaching as evidence the PowerPoint presentation that he had made at the NACCTFO conference on Nationwide's behalf. Plaintiff's SMF ¶ 67; Plunkett Decl. ¶¶ 13-14; Allen Decl. ¶ 37.

### F.  Plunkett's Other Uses of MUNICIPAY Mark

No later than April 6, 2009, Plunkett began using the MUNICIPAY mark on the website of his competing company, Government Payment Processing, also referred to as GovPay. Plaintiff's SMF ¶ 69; First Nonni Decl. ¶¶ 30-32 & Exh. G (Docket No. 9-9) thereto.  Plunkett made a number of false statements using the MUNICIPAY mark on that website.  Plaintiff's SMF ¶ 70; First Nonni Decl. ¶ 32.  The website stated that "GovPay introduced MuniciPAY a virtual terminal offered by Nationwide Payment Solutions in July of 2008."  Plaintiff's SMF ¶ 71; First Nonni Decl. ¶ 33 & Exh. G thereto at [1].  GovPay did not introduce MuniciPAY. Plaintiff's SMF ¶ 72; First Nonni Decl. ¶ 34.  The website also stated, "GovPay offers MuniciPAY's Virtual Terminal Solution.  MuniciPAY is the only virtual terminal in the marketplace that automatically calculates the convenience fee, presents the fee and the total transaction amount . . . ."  Plaintiff's SMF ¶ 73; First Nonni Decl. ¶ 35 & Exh. G thereto at [3]. To the extent that this statement indicates that GovPay had the ability to offer the MuniciPAY software, it is untrue.  Plaintiff's SMF ¶ 74; First Nonni Decl. ¶ 36.

The website also manipulates a quotation from a prospective Nationwide customer in order to falsely connect the defendants' company, GovPay, to Nationwide's MUNICIPAY mark. Plaintiff's SMF ¶ 75; First Nonni Decl. ¶ 37.  Mark Kiester, Audit Diretor of the Alachua (FL) County Tax Collector, referred to Nationwide and its MUNICIPAY product when he stated: "We have investigated multiple vend[o]rs and Municipay is at the top of our list."  Plaintiff's SMF ¶¶ 76-77; First Nonni Decl. ¶¶ 38-40 & Exh. G thereto at [7].  In other places on their website, the defendants posted a version of Kiester's quotation edited to state, falsely: "We have investigated multiple vendors and *GovPay/MuniciPAY* is at the top of our list."  Plaintiff's SMF ¶ 78; First Nonni Decl. ¶ 41 & Exh. G thereto at [2], [4] (emphasis added).  In Nonni's view, this

manipulation of Kiester's quotation was made to confuse consumers and potential consumers into thinking that the defendants' company, GovPay or Government Payment Processing, was the entity that provided the MUNICIPAY software when in fact that software is and was the property of, and provided by, Nationwide.  Plaintiff's SMF ¶ 79; First Nonni Decl. ¶ 42.

Nationwide has demanded on multiple occasions that the defendants cease and desist all use of the MUNICIPAY mark in connection with the sale of financial transaction services and products, including ceasing all use of the www.getmunicipay.com domain.  Plaintiff's SMF ¶ 80; Complaint ¶ 46; Answer ¶ 46.  Plunkett has refused to cease the use of the MUNICIPAY mark and the domain name www.getmunicipay.com.  Plaintiff's SMF ¶ 81; Complaint ¶ 47; Answer ¶ 47; Second Nonni Decl. ¶¶ 17-25.  Plunkett continued to use the www.getmunicipay.com domain to route Internet users to the defendants' competing website, www.governmentpaymentprocessing.com, until ordered to cease doing so by the court on March 24, 2010.  Plaintiff's SMF ¶ 82; Second Nonni Decl. ¶ 25; *see also* Order on Motion for Preliminary Injunction (Docket No. 40) at 12.

However, on October 20, 2010, a Google search of the term "getmunicipay" directed Internet users to a website at http://governmentpayments.blogspot.com that clearly was owned and/or controlled by Plunkett.  Plaintiff's SMF ¶ 83; Second Nonni Decl. ¶ 17 & Exh. 1 (Docket No. 73-1) thereto.  That site still directed visitors to contact Plunkett at jplunkett@getmunicipay.com despite the court's March 24, 2010, order granting Nationwide's motion for a preliminary injunction and directing Plunkett to cease using the MUNICIPAY mark and to deactivate the website www.getmunicipay.com until a final resolution of this action. Plaintiff's SMF ¶ 84; Second Nonni Decl. ¶ 18.

The site also referenced Plunkett in the "About Me" section as "President of Plunkett & Company[,] soon to be doing business as[,] which conceived a Patent Pending Payment Processing solution for Towns, Cities and Counties called MuniciPAY."  Plaintiff's SMF ¶ 85; Second Nonni Decl. ¶ 19 & Exh. 1 thereto.  That statement is untrue and an unauthorized use of the MUNICIPAY mark that could mislead consumers into believing that Plunkett was a developer of Nationwide's electronic government payment processing system.  Plaintiff's SMF ¶ 86; Second Nonni Decl. ¶¶ 20-23.  If a visitor clicked on the bottom of the "About Me" section titled "View my complete profile," the visitor was directed to a full user profile of Plunkett, which reiterated his misstatement from the "About Me" section.  Plaintiff's SMF ¶ 87; Second Nonni Decl. ¶ 21 & Exh. 2 (Docket No. 73-2) thereto.  If a visitor to the profile clicked on the "Email" link in that profile, the visitor was sent to Plunkett's active email account at jim.plunkett@gmail.com.  Plaintiff's SMF ¶ 88; Second Nonni Decl. ¶ 22 & Exh. 3 (Docket No. 73-3) thereto.

At least through January 18, 2010, Plunkett identified himself on his LinkedIn page as "Founder/President at Govpay.com – formerly MuniciPay."  Plaintiff's SMF ¶ 89; First Nonni Decl. ¶ 43 & Exh. H (Docket No. 9-10) thereto.  Plunkett is not a founder of MUNICIPAY, which is Nationwide's electronic government payment processing system.  Plaintiff's SMF ¶ 90; First Nonni Decl. ¶ 44.  Plunkett is not a founder of Nationwide, the entity that developed and owns MUNICIPAY and the MUNICIPAY mark.  Plaintiff's SMF ¶ 91; First Nonni Decl. ¶ 44.  Govpay.com is not formerly MUNICIPAY.  Plaintiff's SMF ¶ 92; First Nonni Decl. ¶ 44; Plunkett Decl. ¶ 3.  Govpay.com is a d/b/a of Plunkett & Co.  *Id*.  MUNICIPAY is the trademark used by Nationwide to describe its software product.  *Id*.

On or about March 23, 2010, PowerPay, LLC ("PowerPay"), a competitor of Nationwide, submitted a bid to the cities of Portland and South Portland to provide those entities with electronic government payment processing services. Plaintiff's SMF ¶ 93; Second Osborn Decl. ¶¶ 3-5; Plunkett Dep. at 27-28 & Exh. 7 (Docket No. 75-4) thereto. Plunkett drafted the majority of the PowerPay bid proposal, which identified Government Payment Processing as a division of PowerPay. Plaintiff's SMF ¶ 94; Plunkett Dep. at 27-28 & Exh. 7 thereto at 2. The proposal listed Plunkett as the primary point of contact for the cities of Portland and South Portland with respect to the proposal. Plaintiff's SMF ¶ 95; Exh. 7 to Plunkett Dep. at 2. Plunkett drafted the section of the proposal titled "About Us." Plaintiff's SMF ¶ 96; Plunkett Dep. at 28. The "About Us" section states that Plunkett "founded and was Program Manager for Municipay." Plaintiff's SMF ¶ 97; Exh. 7 to Plunkett Dep. at 2.

Nationwide also submitted a bid to the cities of Portland and South Portland to provide those entities with electronic government payment processing services, offering its MUNICIPAY product. Plaintiff's SMF ¶ 99; Second Nonni Decl. ¶ 29. PowerPay was awarded the project. Plaintiff's SMF ¶ 100; Second Nonni Decl. ¶ 30. Nationwide was the second-place bidder for the project. Plaintiff's SMF ¶ 101; Second Nonni Decl. ¶ 30.

### G. Loan Agreement

On or about June 11, 2008, Nationwide loaned Plunkett $5,000.00. Plaintiff's SMF ¶ 102; Second Nonni Decl. ¶ 31. The terms of that loan were repayment over an 18-month period at an annual percentage rate of 8 percent, with no payments for the first 90 days and interest-only payments for the second 90 days. Plaintiff's SMF ¶ 103; Second Nonni Decl. ¶ 32; Plunkett Dep. at 43 & Exh. 9 (Docket No. 75-5) thereto. The purpose of the loan was to provide payments owed by Plunkett to his ex-wife. Plaintiff's SMF ¶ 104; Exh. 9 to Plunkett Dep.

Pursuant to the parties' loan agreement, Nationwide paid $5,000.00 on Plunkett's behalf to his ex-wife. Plaintiff's SMF ¶ 105; Second Nonni Decl. ¶ 33. Plunkett has not repaid any portion of the loan principal or interest thereon. Plaintiff's SMF ¶ 106; Second Nonni Decl. ¶ 34.

### III. Discussion

Nationwide seeks summary judgment as to all of its affirmative claims against Plunkett, namely, Count I (trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 *et seq*.), Count II (violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)), Count III (false designation and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)), Count IV (common law trademark infringement), Count V (violation of Maine's Deceptive Trade Practices Act ("DTPA"), 10 M.R.S.A. § 1211 *et seq*.), Count VII (breach of loan agreement), and Count VIII (unjust enrichment). *See* Motion at 1 & n.1; Complaint ¶¶ 50-85, 99-108.

It also seeks summary judgment as against Plunkett on all counts of the defendants' counterclaim pressed solely or in part by Plunkett, namely, Count I (seeking declaratory judgment that the defendants did not engage in trademark infringement in violation of the Lanham Act and common law), Count II (seeking declaratory judgment that Plunkett did not violate the ACPA), Count III (seeking declaratory judgment that the defendants did not engage in false designation or unfair competition in violation of the Lanham Act), Count IV (seeking declaratory judgment that the defendants did not violate the DTPA), and Count XV (seeking declaratory judgment that Plunkett is the sole inventor and owner of patent applications filed by

Nationwide).  *See* Motion at 1 & n.1; Counterclaims and Demand for Jury Trial Thereon ("Counterclaim"), commencing on page 29 of Answer, ¶¶ 8-31, 94-100.[4]

For the reasons that follow, I recommend that the court grant the Motion.

## A. Trademark Infringement, Unfair Competition, DTPA Claims

Nationwide argues for summary judgment in its favor as to its Lanham Act, common law trademark infringement, and DTPA claims (Counts I, III, IV, and V of the Complaint) and as to Plunkett's mirror-image requests for declaratory judgment that no such violations occurred (Counts I, III, and IV of the Counterclaim) on grounds that the test for whether any of these separate violations occurred is essentially the same, and Nationwide meets it.  *See* Motion at 8-9. I agree.

This court has noted that, to demonstrate either trademark infringement or unfair competition in violation of the Lanham Act, a plaintiff must "prove three elements: (1) that it uses and thereby owns a mark; (2) that Defendants are using the same or a similar mark; and (3) that Defendants' use is likely to confuse the public, thereby harming the plaintiff."  *Wild Willy's Holding Co. v. Palladino*, 463 F. Supp.2d 65, 68 (D. Me. 2006) (citation and internal punctuation omitted).

This court has applied essentially the same test to claims of false designation of origin and false description under the Lanham Act and of violation of the Maine DTPA.  *See, e.g., Greentree Labs., Inc. v. G.G. Bean, Inc.*, 718 F. Supp. 998, 1000 (D. Me. 1989).  In a similar vein, for purposes of a claim of trademark infringement pursuant to Maine common law, "the

---

[4] Nationwide takes the position that, although Count XIV of the counterclaim can be construed as having been brought by Plunkett as well as Plunkett & Co., *see* Counterclaim ¶¶ 90-93, Plunkett lacks standing to bring it and, hence, that count is fully resolved by Plunkett & Co.'s default, *see* Motion at 1 n.1.  I have recommended that the court grant Nationwide's motion for default judgment against Plunkett & Co., including as to Count XIV of the Counterclaim.  *See* Recommended Findings of Fact and Conclusions of Law on Motion for Default Judgment (Docket No. 90) at 18-19.

ultimate question is whether, when the plaintiff in fact has a protectable interest in a trademark . . ., the conduct of another party causes a likelihood of confusion that the parties' businesses are connected or associated, or that the goods or services offered by one have been produced, approved or sponsored by the other." *Knowles Co. v. Northeast Harbor Insurers*, No. Civ.A. CV-97-12, 2003 WL 23162892, at *7 (Me. Super. Ct. Dec. 15, 2003).

Nationwide adduces evidence, which Plunkett has not controverted, that is sufficient to prove each of the three requisite elements, entitling it to summary judgment as to the foregoing claims and mirror-image counts of the counterclaim.

### 1. Ownership of Mark

Nationwide demonstrates that it is the rightful owner of the MUNICIPAY mark, having been the first to use that mark in connection with the sale of financial transaction services and products to municipalities. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815 (1st Cir. 1987) ("The right to trademark and service mark rights is based on prior use, or the one who first uses the marks in connection with a peculiar line of business. Trademark rights do not generally arise from registration.") (citation omitted).

Nationwide first began selling its products and services in interstate commerce under the MUNICIPAY mark as early as May 2008. On July 9, 2008, it directed Plunkett to begin using the MUNICIPAY mark to market and sell its electronic government payment processing software application, and Plunkett did so at the NACCTFO conference on July 12, 2008. This was Plunkett's first use of the mark, and he did so on behalf of Nationwide.

## 2. Use of Same or Similar Mark

Nationwide demonstrates that, beginning in late autumn 2008, Plunkett began using a mark or marks identical or nearly identical to Nationwide's MUNICIPAY mark in connection with Plunkett's competing business interests.  These usages included:

1.      His registration on November 8, 2008, of the domain name www.getmunicipay.com despite his full awareness that Nationwide had acquired the domain name www.municipay.com in July 2008 and had begun using it to market its products and services in September 2008;

2.      His filing on December 16, 2008, of a USPTO application to register the MUNICIPAY mark, in connection with which he referenced a usage of the mark on July 12, 2008, that he had actually made on behalf of Nationwide;

3.      Beginning no later than April 9, 2009, his use of the MUNICIPAY mark on the website of his competing company, Government Payment Processing, or GovPay, in which he made false statements about GovPay's role in the introduction of, and its ability to sell, Nationwide's MUNICIPAY product and revised a customer quotation to create a misleading inference that his company was connected to Nationwide;

4.      His misleading identification of himself, as recently as January 18, 2010, on a LinkedIn website as "Founder/President at Govpay.com – formerly MuniciPay";

5.      His false statement, in the winning PowerPay bid to provide electronic government payment processing services to the cities of Portland and South Portland, that he had "founded and was Program Manager for Municipay."; and

6.      The continuing link in Internet searches between Plunkett's business interests and the MUNICIPAY mark, and Plunkett's continuing mention of the word MUNICIPAY, even in

the wake of the court's order that he desist from its use pending final adjudication of the instant litigation.

To the extent that these actions were taken on behalf of Plunkett & Co., Plunkett nonetheless is personally liable for them, as the sole owner and officer of Plunkett & Co. and the individual who exercised full control over it. *See, e.g., Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in trademark infringement and unfair trade practices cases.") (citations and internal quotation marks omitted); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil.").

### 3. Likelihood of Confusion

Inquiry into likelihood of confusion focuses on whether "members of the purchasing public are likely to mistake defendant's products for plaintiff's protected products within the same category." *Wild Willy's*, 463 F. Supp.2d at 69 (citation and internal quotation marks omitted). Factors relevant to analysis in a trademark case are "(1) the similarity of the marks; (2) the similarity of goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of plaintiff's mark." *Id*. "No singular factor is determinative, rather all factors must be evaluated in context and any meaningful inquiry into the likelihood of confusion . . . must

replicate the circumstances in which the ordinary consumer actually confronts (or probably will confront) the conflicting mark." *Id.*

Nationwide adduces no evidence of actual consumer confusion; however, it need not do so. *See, e.g., Borinquen Biscuit Corp. v. M.V. Trading Corp*., 443 F.3d 112, 120 (1st Cir. 2006) ("[A] trademark holder's burden is to show likelihood of confusion, not actual confusion."); *Park 'N Fly v. Dollar Park & Fly, Inc*., 782 F.2d 1508, 1509 (9th Cir. 1986) (although plaintiff did not adduce evidence of actual confusion and two factors, the strength of its mark and the defendant's intent in adopting its mark, did not weigh heavily in favor of a finding of infringement, plaintiff proved likelihood of confusion in circumstances in which marks were virtually identical, services provided were precisely the same, and parties provided services in convergent marketing channels). Nationwide demonstrates likelihood of confusion based on:

1.      Plunkett's use of the identical or nearly identical mark. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1314 (11th Cir. 1998) (finding strong likelihood of confusion where the parties used identical trademarks);

2.      Plunkett's use of the mark in connection with the same or similar products and services provided by Nationwide, namely, electronic payment transaction services to municipalities and governmental entities. *See Butcher Co. v. Bouthot*, 124 F. Supp.2d 750, 756 (D. Me. 2001), *recon. denied*, 2001 WL 263313 (D. Me. Mar. 16, 2001) (finding strong likelihood of confusion when products serve the same purpose);

3.      Plunkett's and Nationwide's use of similar channels of trade and advertising modes to reach the same prospective municipal and governmental customers; for example, use of the Internet, with Nationwide using www.municipay.com and Plunkett using www.getmunicipay.com, and presentations at municipal conferences and similar events;

4.      Plunkett's apparent deliberate misappropriation of the mark of Nationwide, developed in connection with Nationwide's proprietary software, both during and after the term of Plunkett & Co.'s service as Nationwide's sales agent, to further the interests of his competing business entity in competition against Nationwide.  As Nationwide observes, *see* Motion at 17, it adduces evidence that Plunkett has gone so far as to market Nationwide's electronic government payment processing application as his own and to suggest, falsely, that he played a key role in developing that product, demonstrating not only willful infringement but also bad faith.  *See Pearson Educ., Inc. v. Kumar*, 721 F. Supp.2d 166, 191 (S.D.N.Y. 2010) ("[W]here the defendant is aware of the existence of the plaintiff's mark and proceeds to use it in violation of unfair competition [proscriptions], a finding of 'bad faith' has been inferred.  Infringers' actions may also be imbued with bad faith where their practices include palming off, actual deception, appropriation of the property of another, and deliberate copying.") (citations and internal quotation marks omitted); *Turner Greenberg Assocs., Inc. v. C & C Imports, Inc.*, 320 F. Supp.2d 1317, 1333 (S.D. Fla. 2004), *aff'd*, 128 Fed. Appx. 755 (11th Cir. 2005) ("If the defendant adopted the plaintiff[']s mark with the intent of obtaining benefit from the plaintiff[']s business reputation, this fact alone may be sufficient to justify the inference that there is confusing similarity.") (citation and internal quotation marks omitted); and

5.      The inherent distinctiveness of the MUNICIPAY mark, which "requires imagination, thought and perception to reach a conclusion as to the nature of goods[,]" *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12-13 & n.10 (1st Cir. 2008) (citations and internal quotation marks omitted), and Nationwide's extensive promotion, since as early as May 2008, of its products and services using the MUNICIPAY mark, including *via* the website www.municipay.com, local and national trade shows, and telephonic and print marketing.

For the foregoing reasons, Nationwide is entitled to summary judgment as against Plunkett on Counts I, III, IV, and V of the Complaint and Counts I, III, and IV of the Counterclaim.

### B. Cybersquatting Claims

"A trademark owner asserting a claim under the ACPA must establish the following: (1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *DaimlerChrysler v. Net Inc*., 388 F.3d 201, 204 (6th Cir. 2004).

Nationwide seeks summary judgment as to Count II of the Complaint, alleging that Plunkett violated the ACPA, and Count II of the Counterclaim, seeking declaratory judgment that he did not do so, on the ground that the undisputed facts demonstrate that it has met this burden. I agree.

As discussed above, Nationwide adduces uncontroverted evidence establishing its rights in the mark, that its mark is distinctive, that Plunkett's website, www.getmunicipay.com, is confusingly similar to that of Nationwide, www.municipay.com, *see, e.g., id*. at 206 (defendant's foradodge.com domain name was confusingly similar to the protected DODGE mark), and that Plunkett used, registered, or trafficked in that domain name with a bad-faith intent to profit.

For these reasons, Nationwide is entitled to summary judgment as against Plunkett on Count II of the Complaint and Count II of the Counterclaim.

## C.  Breach of Loan Agreement and Unjust Enrichment

Nationwide next seeks summary judgment as to Counts VII and VIII of the Complaint, setting forth alternative theories of recovery of monies owed by Plunkett pursuant to the parties' loan agreement.  *See* Motion at 20-21.  Nationwide demonstrates its entitlement to summary judgment as to both counts.

Nationwide submits an exchange of emails showing that Plunkett agreed to the terms of the loan in question, namely, payment of the loan proceeds directly to his ex-wife, 8 percent annual interest accruing from the date of funding, no payments for 90 days, interest-only payments for the next 90 days, and a fixed payment schedule over the remaining 12 months. Although the agreement was not to be performed within a year, implicating Maine's statute of frauds, *see* 33 M.R.S.A. § 51, the email exchange satisfies the requirement of a writing, *see, e.g., Roger Edwards, LLC v. Fiddes & Son, Ltd*., 245 F. Supp.2d 251, 261 (D. Me. 2003), *aff'd in part, appeal dismissed in part as moot*, 387 F.3d 90 (1st Cir. 2004) ("In the absence of any suggestion by the defendant that Gooding lacked authority to make the representations made in his e-mails or that he did not intend to bind the defendant, I conclude that his e-mails are sufficient under Maine law to meet the requirements of section 51[.]").

Nationwide adduces uncontroverted evidence that it made the loan in question, totaling $5,000.00, on or about June 11, 2008, and that Plunkett never has repaid any of the principal or interest, thereby breaching the loan agreement.

Alternatively, Nationwide's showing suffices to make out a claim of unjust enrichment with respect to the loan, with Nationwide demonstrating that "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for

it to retain the benefit without payment of its value." *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 27, 973 A.2d 743, 750 (citation and internal quotation marks omitted).

Nationwide accordingly is entitled to summary judgment as against Plunkett on Counts VII and VIII of the Complaint.

### D. Plunkett's Claim of Ownership of Patent Applications

Nationwide finally seeks summary judgment with respect to Count XV of the Counterclaim, in which Plunkett requests declaratory judgment that he is the sole inventor and owner of one or more patent applications filed by Nationwide with respect to the proprietary government payment application advertised and sold under the name MUNICIPAY. *See* Motion at 21-23; Answer ¶ 43; Counterclaim 94-100.

As Nationwide argues, *see* Motion at 21, there is absolutely no evidence that Plunkett invented the MUNICIPAY payment application. Indeed, Nationwide adduces uncontroverted evidence that it developed that application without technical input from Plunkett, that Plunkett had no idea how to design such a system, and that Plunkett has not even reviewed Nationwide's patent application for its electronic government payment processing system.

Nationwide accordingly is entitled to summary judgment as against Plunkett on Count XV of the Counterclaim.

### IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the Motion, awarding summary judgment in favor of Nationwide and as against Plunkett on Counts I, II, III, IV, V, VII, and VIII of the Complaint and Counts I, II, III, IV, and XV of the Counterclaim.

### <u>NOTICE</u>

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

*which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 3rd day of February, 2011.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge