# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| NATIONWIDE PAYMENT SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 2:09-cv-600-GZS |
| JAMES PLUNKETT, et al., | ) ) ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTION FOR ATTORNEY FEES

Plaintiff Nationwide Payment Solutions, LLC ("Nationwide") moves for attorney fees in the amount of $117,177.60 following the entry of judgment in its favor on its claims against the defendants and the defendants' counterclaims against it, and the court's determination that it should be awarded attorney fees. *See* Judgment (Docket No. 104); Plaintiff Nationwide Payment Solutions, LLC's Application for Attorneys' Fees ("Motion") (Docket No. 111); Affidavit of Theodore A. Small ("Second Small Aff.") (Docket No. 122). For the reasons that follow, I recommend that the court grant the Motion, albeit in the lesser sum of $116,284.00.

### I. Applicable Legal Standards

As this court recently has stated:

> In considering what amount of attorney's fees may be awarded in any fee-shifting case, the Court begins with a lodestar analysis, which requires the Court to multiply counsel's reasonable hourly rate by the number of hours productively expended by counsel. In determining the number of hours productively spent, the Court may adjust the number of hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case and may disallow time spent litigating failed claims. In determining the proper hourly rate, the Court applies the prevailing market rate. Finally, the trial court has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter.

1

*Spooner v. EEN, Inc.*, __ F. Supp.2d __, No. 08-cv-262-P-S, 2010 WL 4286358, at *1 (D. Me. Oct. 28, 2010), *aff'd*, 644 F.3d 62 (1st Cir. 2011) (citations and internal punctuation omitted).

## II. Background

In initially filing its petition for attorney fees, Nationwide submitted a redacted version of its invoices detailing the attorney and paralegal hours expended in this case. *See* Docket No. 112-1. In view of that substantial redaction, which impeded meaningful review of the reasonableness of the fee request, I denied its petition without prejudice, inviting it to file a motion for *in camera* review of its billing invoices. *See* Docket No. 116. It immediately did so. *See* Docket No. 117. *Pro se* defendant Plunkett opposed that motion, *see* Docket No. 120, which I denied, affording Nationwide 10 days to file an unredacted copy of its invoices, making them available to Plunkett, or to notify the court that it chose to stand on its redacted invoices, at the risk that its fee request would be denied at least in part on the basis of the redactions, *see* Docket No. 121. I directed that if Nationwide chose to file an unredacted copy of its invoices, Plunkett would have 10 days from the date of that filing to submit any objections to the reasonableness of Nationwide's fee request. *See id*. at 5. Nationwide chose to file an unredacted copy of its fee invoices. *See* Docket No. 122-1. Plunkett filed no objection. *See* ECF Docket.

## III. Discussion

### A. Overview

In support of the Motion, Nationwide submits 117 pages of Bernstein Shur invoices covering professional services rendered for the period from April 14, 2009, through April 12, 2011. *See* Docket No. 122-1. The total number of hours billed is not calculated, *see id*.; however, by my calculations, that figure is 538.1 hours. The final page of the invoices lists fees of $116,764.00 and two categories of costs, totaling $704.20 and $318.42, respectively. *See id*.

at 117. While those figures are not explained, it is reasonable to assume that they constitute the cumulative totals in those categories as of April 12, 2011. Nationwide has submitted no updated invoices. *Compare* Docket No. 112-1 *with* Docket No. 122-1.

During the approximately two-year period covered by the invoices, Bernstein Shur provided an array of services that included (i) reviewing a trademark application filed with the United States Patent and Trademark Office by the defendants, (ii) drafting a cease and desist letter, (iii) ongoing efforts to settle the parties' dispute, (iv) preparing and filing the complaint and the amended complaint in this suit, (v) preparing and filing an answer and an amended answer to the defendants' counterclaims, (vi) preparing and filing a motion for a preliminary injunction, supported by an affidavit of Nationwide principal Jamie Nonni and 12 exhibits thereto, and a reply in support of that motion, accompanied by two affidavits and four additional exhibits, (vii) preparing for, and participating in, a non-evidentiary hearing on the motion for a preliminary injunction, (viii) filing an injunction bond, (ix) propounding discovery, including on third parties, and responding to discovery requests, (x) participating in several telephone conferences with the court, including a conference regarding the withdrawal of the defendants' counsel from representation of the defendants, (xi) preparing and filing two motions for sanctions related to the defendants' failure, following the withdrawal of their counsel, to respond to discovery requests or otherwise engage in any discovery, (xii) preparing and filing motions for the entry of default and for a default judgment against the corporate defendant, (xiii) preparing and filing a motion for summary judgment against the individual defendant, Plunkett, (xiv) responding to a motion by Plunkett to dismiss and for sanctions, (xv) preparing for, and attending, a damages hearing in connection with the motion for default judgment, and

(xvi) responding to objections filed by Plunkett to recommended decisions on the motion for default judgment and the motion for summary judgment.

Attorney John Osborn was the lead attorney in this matter, with primary responsibility for this case, until December 29, 2010, when attorney Theodore Small took over that role. *See* Affidavit of Theodore A. Small ("First Small Aff.") (Docket No. 111-1) ¶ 3; Docket Nos. 87-89. As of that time, I had already issued recommended decisions with respect to Nationwide's motions for default judgment and summary judgment. Thus, Attorney Small has been responsible for the filing of responses to Plunkett's objections to those recommended decisions and for post-judgment matters, including the filing of petitions for attorney fees and a bill of costs. A careful review of the invoices reveals that Attorney Osborn personally performed the bulk of the substantive work in this case, assisted by Attorney Kai McGintee, who focused primarily on research and drafting of certain motions and other documents. Attorneys James Keenan and Eben Albert-Knopp, as well as at least one paralegal, also performed work for Nationwide. However, time billed for their services is negligible compared with that billed for the services of Attorneys Osborn and McGintee.

### B. Reasonableness of Hourly Rates

Attorney Small avers that the rates charged to Nationwide by himself and Attorneys Osborn, McGintee, Keenan, and Albert-Knopp were their customary rates, charged to Bernstein Shur's other clients. *See* First Small Aff. ¶ 5. Those hourly rates were $235 for Attorneys Osborn and Keenan and $140 for Attorney McGintee in 2009, and $240 for Attorney Osborn, $155 for Attorney McGintee, $250 for Attorney Keenan, $150 for Attorney Albert-Knopp, and $205 for Attorney Small in 2010. *See id*. Paralegal billing rates over the course of the case ranged from $90 to $112 hourly. *See id*. These rates are reasonable. *See, e.g., Spooner*, 2010

4

WL 4286358, at *2-*3 (finding attorney hourly rates of $175 and $210, and paralegal hourly rate of $100, reasonable).

## C. Number of Hours Productively Expended

An analysis of Bernstein Shur's billing invoices reveals that its attorneys devoted the bulk of their time to preparing and responding to dispositive motions (roughly 167 hours), preparing and defending their client's motion for a preliminary injunction (roughly 137 hours), and engaging in discovery, including filing two motions for sanctions related to Plunkett's repeated failure to respond to Nationwide's discovery requests (roughly 114 hours). With one small exception relating to discovery, discussed below, I find that this time was productively expended.

With respect to dispositive motions, Bernstein Shur's attorneys filed a motion for default judgment, prepared for and attended a damages hearing, prepared a memorandum in connection with that damages hearing, filed a motion for summary judgment and accompanying statement of material facts, defended against Plunkett's motion to dismiss, and responded to Plunkett's objections to my recommended decisions. This was a considerable amount of work, reasonably requiring the roughly 167 hours billed for its performance. Beyond this, the hours billed were productively expended in that Nationwide ultimately prevailed on both of its dispositive motions and in defending against that of Plunkett.

With respect to the motion for preliminary injunction, Attorneys Osborn and McGintee devoted roughly 57 hours to the preparation of the initial motion, roughly 53 hours to the preparation of a reply brief and additional supporting evidence, roughly 21 hours to preparation for and attendance at the court's preliminary injunction hearing, and roughly six hours to obtaining and filing a preliminary injunction bond and various injunction enforcement matters.

While the expenditure of nearly as many hours on a reply brief as an initial brief, and the expenditure of approximately 18 hours preparing for an oral argument, might seem excessive, I conclude that the time was reasonably spent in the circumstances.

With respect to the reply brief, Bernstein Shur undertook additional research and gathered additional evidence in response to the defendants' opposing brief, (i) adducing evidence that Nationwide first used the MUNICIPAY trademark in commerce at a meeting in May 2008, (ii) shoring up its contention that, although Plunkett claimed to have first used the MUNICIPAY trademark at a trade show on July 12, 2008, he did so as a sales agent for Nationwide, and (iii) arguing that, although Plunkett alleged that he had conceived of the idea of a single-swipe credit card solution to new MasterCard payment rules, Nationwide developed and designed the product that it marketed under the MUNICIPAY trademark.

Preparation for the preliminary injunction hearing did not simply consist of document review. It included a teleconference with the court regarding the nature of the hearing to be held, internal exploration of whether an evidentiary hearing was necessary, the joint filing with the defendants of a memorandum requesting oral argument only, and the undertaking of research on the subject of trademark ownership rights of a sales agent compared with those of a manufacturer.

Beyond this, Nationwide won a significant victory, prevailing in its bid for a preliminary injunction on all bases presented to the court and gaining significant momentum in this lawsuit.

Turning to the category of discovery, I conclude that, with one small exception, the roughly 114 hours devoted to discovery-related tasks were reasonably expended in propounding and responding to discovery requests and seeking to compel responses from the defendants once they no longer were represented by counsel. The exception is that, on March 19, 2010,

Nationwide filed a motion to compel initial disclosures that was stricken for failure to comply with Local Rule 26(b). *See* Docket Nos. 38, 42. Attorney Osborn billed some portion of 2.8 hours on March 19, 2010, for the task of preparing and filing that motion. *See* Docket No. 122-1 at 52. I will assume that this task consumed 2.0 hours. That time was not productively expended and should be subtracted from the overall total.

As to the remaining time billed, which includes time spent (i) attempting to resolve the parties' dispute prior to filing the instant suit, (ii) preparing the complaint, the amended complaint, the answer to the counterclaims, and the amended answer to the counterclaims, (iii) attending to scheduling order deadline issues, (iv) updating and conferring with the client, and (v) engaging in ongoing settlement negotiations, I find no individual time entry reflecting excessive or unproductively expended attorney or paralegal time.[1]

### D. Circumstances Warranting Discretionary Adjustment

Although the plaintiff seeks a total of $117,177.60 in attorney fees, the only seeming total reflected in the invoices that it has submitted is $116,764.00. For failure of proof, the court should not award more than that amount. In addition, for the reasons discussed above, I recommend that the court subtract $480.00 in fees charged by Attorney Osborn to reflect an estimated 2.0 hours unreasonably expended in the preparation and filing of a non-compliant motion to compel initial disclosures, resulting in a total award of $116,284.00.

Nationwide does not seek an upward adjustment in the lodestar amount. No circumstances warrant further downward adjustment of the fee amount sought. Bernstein Shur's work was of high quality, its approach to this hard-fought litigation was efficient, and its client prevailed on all of its claims and on the defendants' counterclaims.

---

[1] On December 9, 2009, Attorney Osborn billed for 1.2 hours spent on five tasks, one of which was reviewing and responding to emails from Nationwide regarding a personnel issue that seemingly has no connection to the instant suit. *See* Docket No. 122-1 at 29. Nonetheless, the time spent on that task was *de minimis*.

## IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** Nationwide's motion for an award of attorney fees, albeit in the amount of $116,284.00, rather than the requested $117,177.60.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge